(No. 35872.

PHYLLIS GRAY, Appellant, *vs.* AMERICAN RADIATOR AND STANDARD SANITARY CORPORATION *et al.*, Appellees.

*Opinion filed June 14, 1961.—Rehearing denied September 20, 1961.*

Victor N. Cardosi, and Leo S. Karlin & Daniel Karlin, both of Chicago, (Leo S. Karlin, and Alan D. Katz, of counsel,) for appellant Phyllis Gray; Baker,

MᴄKᴇɴᴢɪᴇ & Hɪɢʜᴛᴏᴡᴇʀ, of Chicago, (Jᴏʜɴ C. MᴄKᴇɴ-
ᴢɪᴇ, and Fʀᴀɴᴄɪs D. Mᴏʀʀɪssᴇʏ, of counsel,) for appellant
American Radiator and Standard Sanitary Corp.

Lᴏʀᴅ, Bɪssᴇʟʟ & Bʀᴏᴏᴋ, of Chicago, (Jᴀʏ M. Sᴍʏsᴇʀ,
and Wɪʟʟɪᴀᴍ P. Bᴜᴛʟᴇʀ, of counsel,) for appellees.

Mr. Jᴜsᴛɪᴄᴇ Kʟɪɴɢʙɪᴇʟ delivered the opinion of the
court:

Phyllis Gray appeals from a judgment of the circuit
court of Cook County dismissing her action for damages.
The issues are concerned with the construction and validity
of our statute providing for substituted service of process
on nonresidents. Since a constitutional question is involved,
the appeal is direct to this court.

The suit was brought against the Titan Valve Manu-
facturing Company and others, on the ground that a certain
water heater had exploded and injured the plaintiff. The
complaint charges, *inter alia,* that the Titan company, a for-
eign corporation, had negligently constructed the safety
valve; and that the injuries were suffered as a proximate
result thereof. Summons issued and was duly served on
Titan's registered agent in Cleveland, Ohio. The corpora-
tion appeared specially, filing a motion to quash on the
ground that it had not committed a tortious act in Illinois.
Its affidavit stated that it does no business here; that it has
no agent physically present in Illinois; and that it sells the
completed valves to defendant, American Radiator & Stand-
ard Sanitary Corporation, outside Illinois. The American
Radiator & Standard Sanitary Corporation (also made a
defendant) filed an answer in which it set up a cross claim
against Titan, alleging that Titan made certain warranties
to American Radiator, and that if the latter is held liable to
the plaintiff it should be indemnified and held harmless by
Titan. The court granted Titan's motion, dismissing both
the complaint and the cross claim.

Section 16 of the Civil Practice Act provides that summons may be personally served upon any party outside the State; and that as to nonresidents who have submitted to the jurisdiction of our courts, such service has the force and effect of personal service within Illinois. (Ill. Rev. Stat. 1959, chap. 110, par. 16.) Under section 17(1)(b) a nonresident who, either in person or through an agent, commits a tortious act within this State submits to jurisdiction. (Ill. Rev. Stat. 1959, chap. 110, par. 17.) The questions in this case are (1) whether a tortious act was committed here, within the meaning of the statute, despite the fact that the Titan corporation had no agent in Illinois; and (2) whether the statute, if so construed, violates due process of law.

The first aspect to which we must direct our attention is one of statutory construction. Under section 17(1)(b) jurisdiction is predicated on the committing of a tortious act in this State. It is not disputed, for the purpose of this appeal, that a tortious act was committed. The issue depends on whether it was committed in Illinois, so as to warrant the assertion of personal jurisdiction by service of summons in Ohio.

The wrong in the case at bar did not originate in the conduct of a servant physically present here, but arose instead from acts performed at the place of manufacture. Only the consequences occurred in Illinois. It is well established, however, that in law the place of a wrong is where the last event takes place which is necessary to render the actor liable. (Restatement, Conflict of Laws, sec. 377.) A second indication that the place of injury is the determining factor is found in rules governing the time within which an action must be brought. In applying statutes of limitation our court has computed the period from the time when the injury is done. (*Madison* v. *Wedron Silica Co.* 352 Ill. 60; *Leroy* v. *City of Springfield*, 81 Ill. 114.) We think it is clear that the alleged negligence in manufacturing the valve cannot be separated from the resulting injury;

and that for present purposes, like those of liability and limitations, the tort was committed in Illinois.

Titan seeks to avoid this result by arguing that instead of using the word "tort," the legislature employed the term "tortious act"; and that the latter refers only to the act or conduct, separate and apart from any consequences thereof. We cannot accept the argument. To be tortious an act must cause injury. The concept of injury is an inseparable part of the phrase. In determining legislative intention courts will read words in their ordinary and popularly understood sense. (*Illinois State Toll Highway Com.* v. *Einfeldt,* 12 Ill.2d 499; *Farrand Coal Co.* v. *Halpin,* 10 Ill.2d 507.) We think the intent should be determined less from technicalities of definition than from considerations of general purpose and effect. To adopt the criteria urged by defendant would tend to promote litigation over extraneous issues concerning the elements of a tort and the territorial incidence of each, whereas the test should be concerned more with those substantial elements of convenience and justice presumably contemplated by the legislature. As we observed in *Nelson* v. *Miller,* 11 Ill.2d 378, the statute contemplates the exertion of jurisdiction over nonresident defendants to the extent permitted by the due-process clause.

The Titan company contends that if the statute is applied so as to confer jurisdiction in this case it violates the requirement of due process of law. The precise constitutional question thus presented has not heretofore been considered by this court. In the *Nelson case* the validity of the statute was upheld in an action against a nonresident whose employee, while physically present in Illinois, allegedly caused the injury. The *ratio decidendi* was that Illinois has an interest in providing relief for injuries caused by persons having "substantial contacts within the State." A standard of fairness or reasonableness was announced, within the limitation that defendant be given a realistic opportunity to appear and be heard. The case at bar concerns the extent

to which due process permits substituted service where defendant had no agent or employee in the State of the forum.

Under modern doctrine the power of a State court to enter a binding judgment against one not served with process within the State depends upon two questions: first, whether he has certain minimum contacts with the State (see *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 90 L. ed. 95, 102), and second, whether there has been a reasonable method of notification. (See *International Shoe Co. v. Washington,* 326 U.S. 310, 320, 90 L. ed. 95, 104-105; *Nelson v. Miller,* 11 Ill.2d 378, 390.) In the case at bar there is no contention that section 16 provides for inadequate notice or that its provisions were not followed. Defendant's argument on constitutionality is confined to the proposition that applying section 17(1)(b), where the injury is defendant's only contact with the State, would exceed the limits of due process.

A proper determination of the question presented requires analysis of those cases which have dealt with the quantum of contact sufficient to warrant jurisdiction. Since the decision in *Pennoyer v. Neff,* 95 U.S. 714, 24 L. ed. 565, the power of a State to exert jurisdiction over nonresidents has been greatly expanded, particularly with respect to foreign corporations. (See *Annotations,* 2 L. ed. 2d 1664, 94 L. ed. 1167.) *International Shoe Co. v. Washington,* 326 U.S. 310, 90 L. ed. 95, was a proceeding to collect unpaid contributions to the unemployment compensation fund of the State of Washington. A statute purported to authorize such proceedings, where the employer was not found within the State, by sending notice by registered mail to its last known address. The defendant foreign corporation, a manufacturer of shoes, employed certain salesmen who resided in Washington and who solicited orders there. In holding that maintenance of the suit did not violate due process the court pointed out that the activities of the corporation in Washingon were not only continuous and

systematic but also gave rise to the liability sued on. It was observed that such operations, which resulted in a large volume of business, established "sufficient contacts or ties with the state of the forum to make it reasonable and just according to our traditional conception of fair play and substantial justice to permit the state to enforce the obligations which appellant has incurred there." 326 U.S. at 320, 90 L. ed. at 104.

Where the business done by a foreign corporation in the State of the forum is of a sufficiently substantial nature, it has been held permissible for the State to entertain a suit against it even though the cause of action arose from activities entirely distinct from its conduct within the State. (*Perkins* v. *Benguet Consolidated Mining Co.* 342 U.S. 437, 96 L. ed. 485.) But where such business or other activity is not substantial, the particular act or transaction having no connection with the State of the forum, the requirement of "contact" is not satisfied. *Hanson* v. *Denckla,* 357 U.S. 235, 253, 2 L. ed. 2d 1283, 1298.

In the case at bar the defendant's only contact with this State is found in the fact that a product manufactured in Ohio was incorporated, in Pennsylvania, into a hot water heater which in the course of commerce was sold to an Illinois consumer. The record fails to disclose whether defendant has done any other business in Illinois, either directly or indirectly; and it is argued, in reliance on the *International Shoe* test, that since a course of business here has not been shown there are no "minimum contacts" sufficient to support jurisdiction. We do not think, however, that doing a given volume of business is the only way in which a nonresident can form the required connection with this State. Since the *International Shoe case* was decided the requirements for jurisdiction have been further relaxed, so that at the present time it is sufficient if the act or transaction itself has a substantial connection with the State of the forum.

In *McGee* v. *International Life Insurance Co.* 355 U.S. 220, 2 L. ed. 2d 223, suit was brought in California against a foreign insurance company on a policy issued to a resident of California. The defendant was not served with process in that State but was notified by registered mail at its place of business in Texas, pursuant to a statute permitting such service in suits on insurance contracts. The contract in question was delivered in California, the premiums were mailed from there and the insured was a resident of that State when he died, but defendant had no office or agent in California nor did it solicit any business there apart from the policy sued on. After referring briefly to the *International Shoe case* the court held that "it is sufficient for purposes of due process that the suit was based on *a contract* which had substantial connection" with California. (Emphasis supplied.)

In *Smyth* v. *Twin State Improvement Corp.* 116 Vt. 569, 80 A.2d 664, a Vermont resident engaged a foreign corporation to re-roof his house. While doing the work the corporation negligently damaged the building, and an action was brought for damages. Service of process was made on the Secretary of State and a copy was forwarded to defendant by registered mail at its principal place of business in Massachusetts. A Vermont statute provided for such substituted service on foreign corporations committing a tort in Vermont against a resident of Vermont. In holding that the statute affords due process of law, the court discussed the principal authorities on the question and concluded, *inter alia,* that "continuous activity within the state is not necessary as a prerequisite to jurisdiction."

In *Nelson* v. *Miller,* 11 Ill.2d 378, the commission of a single tort within this State was held sufficient to sustain jurisdiction under the present statute. The defendant in that case, a resident of Wisconsin, was engaged in the business of selling appliances. It was alleged that in the process of delivering a stove in Illinois, an employee of the defendant

negligently caused injury to the plaintiff. In holding that the defendant was not denied due process by being required to defend in Illinois, this court observed at page 390: "The defendant sent his employee into Illinois in the advancement of his own interests. While he was here, the employee and the defendant enjoyed the benefit and protection of the laws of Illinois, including the right to resort to our courts. In the course of his stay here the employee performed acts that gave rise to an injury. The law of Illinois will govern the substantive rights and duties stemming from the incident. Witnesses, other than the defendant's employee, are likely to be found here, and not in Wisconsin. In such circumstances, it is not unreasonable to require the defendant to make his defense here."

Whether the type of activity conducted within the State is adequate to satisfy the requirement depends upon the facts in the particular case. (*Perkins* v. *Benguet Consolidated Mining Co.* 342 U.S. 437, 445, 96 L. ed. 485, 492.) The question cannot be answered by applying a mechanical formula or rule of thumb but by ascertaining what is fair and reasonable in the circumstances. In the application of this flexible test the relevant inquiry is whether defendant engaged in some act or conduct by which he may be said to have invoked the benefits and protections of the law of the forum. (See *Hanson* v. *Denckla*, 357 U.S. 235, 253, 2 L. ed. 2d 1283, 1298; *International Shoe Co.* v. *Washington*, 326 U.S. 310, 319, 90 L. ed. 95, 104.) The relevant decisions since *Pennoyer* v. *Neff* show a development of the concept of personal jurisdiction from one which requires service of process within the State to one which is satisfied either if the act or transaction sued on occurs there or if defendant has engaged in a sufficiently substantial course of activity in the State, provided always that reasonable notice and opportunity to be heard are afforded. As the Vermont court recognized in the *Smyth case,* the

trend in defining due process of law is away from the emphasis on territorial limitations and toward emphasis on providing adequate notice and opportunity to be heard: from the court with immediate power over the defendant, toward the court in which both parties can most conveniently settle their dispute.

In the *McGee case* the court commented on the trend toward expanding State jurisdiction over nonresidents, observing that: "In part this is attributable to the fundamental transformation of our national economy over the years. Today many commercial transactions touch two or more States and may involve parties separated by the full continent. With this increasing nationalization of commerce has come a great increase in the amount of business conducted by mail across state lines. At the same time modern transportation and communication have made it much less burdensome for a party sued to defend himself in a State where he engages in economic activity."

It is true that courts cannot "assume that this trend heralds the eventual demise of all restrictions on the personal jurisdiction of state courts." (*Hanson* v. *Denckla,* 357 U.S. 235, 251, 2 L. ed. 2d 1283, 1296.) An orderly and fair administration of the law throughout the nation requires protection against being compelled to answer claims brought in distant States with which the defendant has little or no association and in which he would be faced with an undue burden or disadvantage in making his defense. It must be remembered that lawsuits can be brought on frivolous demands or groundless claims as well as on legitimate ones, and that procedural rules must be designed and appraised in the light of what is fair and just to both sides in the dispute. Interpretations of basic rights which consider only those of a claimant are not consonant with the fundamental requisites of due process.

In the case at bar defendant does not claim that the

present use of its product in Illinois is an isolated instance. While the record does not disclose the volume of Titan's business or the territory in which applicances incorporating its valves are marketed, it is a reasonable inference that its commercial transactions, like those of other manufacturers, result in substantial use and consumption in this State. To the extent that its business may be directly affected by transactions occurring here it enjoys benefits from the laws of this State, and it has undoubtedly benefited, to a degree, from the protection which our law has given to the marketing of hot water heaters containing its valves. Where the alleged liability arises, as in this case, from the manufacture of products presumably sold in contemplation of use here, it should not matter that the purchase was made from an independent middleman or that someone other than the defendant shipped the product into this State.

With the increasing specialization of commercial activity and the growing interdependence of business enterprises it is seldom that a manufacturer deals directly with consumers in other States. The fact that the benefit he derives from its laws is an indirect one, however, does not make it any the less essential to the conduct of his business; and it is not unreasonable, where a cause of action arises from alleged defects in his product, to say that the use of such products in the ordinary course of commerce is sufficient contact with this State to justify a requirement that he defend here.

As a general proposition, if a corporation elects to sell its products for ultimate use in another State, it is not unjust to hold it answerable there for any damage caused by defects in those products. Advanced means of distribution and other commercial activity have made possible these modern methods of doing business, and have largely effaced the economic significance of State lines. By the same token, today's facilities for transportation and communication have removed much of the difficulty and inconvenience

formerly encountered in defending lawsuits brought in other States.

Unless they are applied in recognition of the changes brought about by technological and economic progress, jurisdictional concepts which may have been reasonable enough in a simpler economy lose their relation to reality, and injustice rather than justice is promoted. Our unchanging principles of justice, whether procedural or substantive in nature, should be scrupulously observed by the courts. But the rules of law which grow and develop within those principles must do so in the light of the facts of economic life as it is lived today. Otherwise the need for adaptation may become so great that basic rights are sacrificed in the name of reform, and the principles themselves become impaired.

The principles of due process relevant to the issue in this case support jurisdiction in the court where both parties can most conveniently settle their dispute. The facts show that the plaintiff, an Illinois resident, was injured in Illinois. The law of Illinois will govern the substantive questions, and witnesses on the issues of injury, damages and other elements relating to the occurrence are most likely to be found here. Under such circumstances the courts of the place of injury usually provide the most convenient forum for trial. (See *Watson* v. *Employers Liability Assurance Corp.* 348 U.S. 66, 72, 99 L. ed. 74, 82.) In *Travelers Health Association* v. *Virginia*, 339 U.S. 643, 94 L. ed. 1154, a Nebraska insurance corporation was held subject to the jurisdiction of a Virginia regulatory commission although it had no paid agents within the State and its only contact there was a mail-order business operated from its Omaha office. The court observed, by way of *dictum*, that "suits on alleged losses can be more conveniently tried in Virginia where witnesses would most likely live and where claims for losses would presumably be investigated. Such factors have been given great weight in applying the doc-

trine of *forum non conveniens*. See *Gulf Oil Co.* v. *Gilbert,* 330 U.S. 501, 508, 91 L. ed. 1055, 1062, 67 S. Ct. 839. And prior decisions of this Court have referred to the unwisdom, unfairness and injustice of permitting policyholders to seek redress only in some distant state where the insurer is incorporated. The Due Process Clause does not forbid a state to protect its citizens from such injustice." (339 U.S. at 649, 94 L. ed. 1161-1162.) We think a similar conclusion must follow in the case at bar.

We are aware of decisions, cited by defendant, wherein the opposite result was reached on somewhat similar factual situations. (See *Erlanger Mills, Inc.* v. *Cohoes Fibre Mills, Inc.,* 239 F.2d 502 (4th cir.); *Hellriegel* v. *Sears Roebuck & Co.* 157 F. Supp. 718 (N.D. Ill., E.D.); *Johns* v. *Bay State Abrasive Products Co.* 89 F. Supp. 654 (D. Md., Civ. D.).) Little purpose can be served, however, by discussing such cases in detail, since the existence of sufficient "contact" depends upon the particular facts in each case. In any event we think the better rule supports jurisdiction in cases of the present kind. We conclude accordingly that defendant's association with this State is sufficient to support the exercise of jurisdiction.

We construe section 17(1)(b) as providing for jurisdiction under the circumstances shown in this case, and we hold that as so construed the statute does not violate due process of law.

The trial court erred in quashing service of summons and in dismissing the complaint and cross claim. The judgment is reversed and the cause is remanded to the circuit court of Cook County, with directions to deny the motion to quash.

*Reversed and remanded, with directions.*