**Beulah M. BIBIE, Plaintiff,**

v.

**T. D. PUBLISHING CORPORATION,**
a corporation, et al., Defendants.

**No. 43292.**

United States District Court
N. D. California, S. D.

Jan. 12, 1966.

**186**

Lewis & Stein, Ronald C. Winchell, San Francisco, Cal., for plaintiff.

Cerf, Robinson & Leland, Marc E. Leland, San Francisco, Cal., for defendant T. D. Publishing Corp.

ZIRPOLI, District Judge.

This action was originally filed by the plaintiff Beulah M. Bibie in the California Superior Court in San Francisco. In substance the complaint alleges that the defendant T. D. Publishing Corporation published an edition of "Official Detective Stories" magazine containing an article which unreasonably invaded the plaintiff's privacy, subjected her to "harassment, contempt, ridicule and mental suffering" and caused damage to her reputation.

Plaintiff obtained a Superior Court order directing that the complaint and summons be served on defendant by the Secretary of State of California.[1] There

is no claim that the statutory procedure was not duly observed.

After removing the action to this court (28 U.S.C. §§ 1332, 1441, 1446), defendant now makes a special appearance and moves the Court to "dismiss or quash the service of summons", stating that the due process clause of the fourteenth amendment to the United States Constitution precludes this Court from asserting jurisdiction over the defendant corporation.

The record before the Court establishes the following:

Defendant is a New York corporation which publishes books and magazines. Its executive, advertising and editorial offices are in New York City. It has no assets, personnel, office, plant, warehouse, salesroom, telephone, telephone listing, post office box or bank account in the State of California. No official of the defendant or its parent corporation has visited California for business purposes since the acquisition of "Official Detective Stories" magazine. In effect, defendant has no direct physical contacts with the State of California.

The corporation's distribution system is controlled by an independent corporate distributor, who purchases the magazines from defendant in the State of New York, and in turn resells them to independent wholesalers throughout the country. The magazines are shipped directly to the wholesalers from the printing plants by common carrier. All orders and payments are made directly to the distributors and not to defendant. The wholesalers who are ultimately responsible for distribution also deal in numerous other publications. They, in turn, sell to individual retailers who sell to the general public.

---

1. Section 411, subdivision 2, of the California Code of Civil Procedure provides for service of summons upon a foreign corporation " * * * doing business in this state; in the manner provided by sections 6500 to 6504, inclusive, of the Corporations Code." The applicable portions of said sections provide for service of process upon the Secretary of State pursuant to judicial order if the corporation has not named an agent for the service of process in California and certain designated officers cannot be found within the state. The Secretary of State is required to forward a copy of the court order and the process to the defendant by registered mail.

The defendant publishes three magazines, "True Detective", "Master Detective", and "Official Detective". Plaintiff's complaint is based upon an article which appeared in "Official Detective". California purchasers account for 11.4% of defendant's total estimated paid sales of "Official Detective" magazine, and for 11.7% of the total estimated paid sales of all three magazines.

"Official Detective" magazine had 2,404 subscribers in California during 1963–64. This was 9.6% of the corporation's entire national subscription. Subscription copies are placed in the mails at the printing plants for direct delivery to the customers. Defendant does not employ any agents or solicitors within the State of California. Subscriptions are obtained by independent jobbers who solicit for many magazines. It is not clear whether any or all of these jobbers who deal directly with defendant are located in California.

During the year 1964 "Official Detective" magazine carried advertising placed by a number of California advertisers. Defendant received $2,052.00 in return for this advertising space. Ads are solicited by an independent sales agency located in New York. This agency relies primarily upon the United States mails and solicits advertising for many national magazines.

■ It is against the foregoing background that the Court must apply the provisions of Section 411 of the California Code of Civil Procedure, which provides for the service of summons upon a foreign corporation "doing business" in this state; in the manner provided by §§ 6500–6504 of the Corporations Code. The scope of a state jurisdictional statute is a matter of state law, and this Court is bound by the decisions of the California Supreme Court.

■ The California courts have now made it abundantly clear that the phrase "doing business" in this state is coextensive with the limitations imposed on state jurisdiction by the due process clause of the fourteenth amendment. See Cosper

v. Smith & Wesson Arms Co., 53 Cal.2d 77, 82, 346 P.2d 409; Fisher Governor Co. v. Superior Court, 53 Cal.2d 222, 224, 1 Cal.Rptr. 1, 347 P.2d 1; Henry R. Jahn & Sons v. Superior Court, 49 Cal. 2d 855, 858–859, 323 P.2d 437; James R. Twiss Ltd. v. Superior Court, 215 Cal. App.2d 247, 253, 30 Cal.Rptr. 98.

■ The modern test of the constitutional limitations on state court jurisdiction over foreign corporations is contained in International Shoe Co. v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), which abandoned the older "presence" test of jurisdiction and substituted the modern approach referred to as "minimum contacts". In essence, the test advanced in *International Shoe,* supra, permits the assertion of jurisdiction over a foreign corporation where the corporation has certain minimum contacts with the forum state and the maintenance of the suit would not offend "traditional notions of fair play and substantial justice". International Shoe, supra, at 316, 66 S.Ct. at 158. This test has been characterized as permitting jurisdiction where it is reasonable under the circumstances to require the defendant to defend in the forum which has asserted jurisdiction. L. D. Reeder Contractors of Arizona v. Higgins Industries, Inc., 265 F.2d 768, 772 (9th Cir. 1959).

The Supreme Court has decided two important cases since *International Shoe,* supra, which shed light on the factors which must be assessed in determining whether it is reasonable to require defense by a foreign corporation.

In McGee v. International Life Insurance Co., 355 U.S. 220, 222, 78 S.Ct. 199, 201, 2 L.Ed.2d 223 (1957), Justice Black noted that " * * * a trend is clearly discernible toward expanding the permissible scope of state jurisdiction over foreign corporations and other nonresidents," and upheld the jurisdiction of the California courts, despite the existence of relatively minimal physical connections between the forum state and the defendant. The defendant corporation in that case had been served pursuant to

Sections 1600, 1604 and 1605 of the California Insurance Code, rather than the more general provisions of the Corporations Code. The delivery of an insurance contract in the forum state by mail and the return of premiums by the same method were the only physical contacts which linked the forum with the defendant.

The reasonableness of asserting jurisdiction did not depend upon substantial physical connections or repeated and successive business activity which would indicate the presence of the defendant in the forum state, but upon other factors which more logically established the interest of the forum state in the subject matter of the lawsuit. Mr. Justice Black reasoned that the State of California has a significant interest in providing an effective means of redress for its citizens. In appraising the interest of the forum, he noted that in the trial of insurance cases the essential elements of proof are to be found in the state of the insured's residence. The Court then went on to balance the inconvenience of defending in a foreign forum against the interest of the plaintiff and the forum state. At no point in the opinion did the Court place any emphasis on the Insurance Code provisions used to accomplish service. It may be argued that these statutes distinguish McGee v. International Life Insurance Co., supra, from the present situation, since they evidence a legislative declaration of a dominant interest in the regulation of the insurance business. This is not a compelling argument, since the section of the Insurance Code which refers to companies which have failed to appoint an agent for service of process is substantially similar to the provisions in the Corporations Code. See James R. Twiss Ltd. v. Superior Court, 215 Cal. App.2d 247, 253, 30 Cal.Rptr. 98.

The broad language of McGee, supra, must be read in context with Hanson v. Denckla, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958). There the Florida Probate Court had attempted to exercise personal jurisdiction over a Delaware trustee. The trust had not been created in Florida and the trust assets were located in Delaware. After creating the trust, the settlor moved to Florida. The settlor continued to correspond with the trustee and received income payments while domiciled in Florida. The settlor also retained a power of appointment and exercised it while domiciled in Florida. The opinion of the Court stated that under these facts there was not sufficient contact to justify the jurisdiction of the Florida courts. The opinion states that "The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State. The application of that rule will vary with the quality and nature of the defendant's activity, but it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Hanson v. Denckla, 357 U.S. 235, at p. 253, 78 S.Ct. 1228, at p. 1239. The Hanson opinion, supra, indicates that if the forum asserting jurisdiction is relying upon a minimum physical connection with the defendant it must be clear that the defendant's affirmative conduct is such that it may be said to have exploited the benefits of business operation in the state asserting jurisdiction. The facts in Hanson v. Denckla, supra, indicated that the trustee had done nothing more than continue in a pre-existing relationship after the settlor's change of domicile.

The balancing theory in jurisdiction cases, the so-called "estimate of conveniences" pioneered by Judge Learned Hand in Hutchinson v. Chase and Gilbert, 45 F.2d 139 (2 Cir. 1930), was expressly approved in International Shoe, supra, 326 U.S. at 317, 66 S.Ct. 154, 90 L.Ed. 95. Judge Hand noted that the considerations are very similar to those which are relevant in the consideration of a forum non conveniens issue.

The issues which are relevant in a forum non conveniens problem were commented upon in Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 67 S.Ct. 839, 91 L.

Ed. 1055 (1947). In effect, the test involves nothing more than a consideration of the practical problems which would be faced in the trial of a lawsuit in alternate forums. In addition, it is also necessary to consider the interest of the forum state in providing an effective means of redress for its citizens. A concise statement of the relevant factors is contained in Fisher Governor Co. v. Superior Court, 53 Cal.2d 222, 1 Cal. Rptr. 1, 347 P.2d 1:

(1) "The interest of the state in providing a forum for its residents (citation omitted) or in regulating the business involved (citation omitted);

(2) "The relative availability of evidence and the burden of defense and prosecution in one place rather than another (citations omitted);

(3) "The ease of access to an alternative forum (citation omitted);

(4) "The avoidance of multiplicity of suits and conflicting adjudications (citations omitted);

(5) "And the extent to which the cause of action arose out of defendant's local activities (citations omitted) * *." id. at pp. 225–226, 1 Cal.Rptr. at pp. 3–4, 347 P.2d at pp. 3–4.

In the instant case it is clear that a substantial portion of the defendant's revenue is obtained from the ultimate sale of its product to California residents. As noted earlier, 11.4% of defendant's estimated paid sales of "Official Detective" magazine are attributable to the citizens of California; 11.7% of the estimated paid sales of all three magazines are attributable to this state; and, in addition, 9.6% of defendant's paid subscribers have California mailing addresses.

Despite the use of separate corporate entities to accomplish distribution, defendant is well aware that a substantial number of its magazines are destined for sale in California. With such notice of ultimate distribution in California, it is not unreasonable to conclude that by its own affirmative act defendant has chosen to exploit the California market

for the sale of its products. See Waco-Porter Corp. v. Superior Court, 211 Cal. App.2d 559, 566, 27 Cal.Rptr. 371. Such privilege of substantial business activity must carry a concomitant responsibility where the subject matter of the lawsuit indicates a strong forum state interest.

Defendant's brief argues that if this Court asserts jurisdiction, the defendant will be subject to the conflicting regulation of fifty separate states. This is not necessarily true, nor does it militate against the right of the forum state to constitutionally assert jurisdiction under the circumstances here present. At some point the defendant's business activities (sales) will be so insubstantial that it would be difficult to find a significant state interest. That is not the case in California, since approximately 11% of defendant's magazines are sold in this state.

Plaintiff's theories apparently contemplate a cause of action in tort for injury to reputation and the unreasonable infliction of mental distress. Since the plaintiff resides in California, the proof of injury to reputation will necessarily require the testimony of witnesses in this state. In contrast, there appear to be no practical considerations which would establish New York as a convenient forum. It is also clear that the plaintiff does not have easy access to a more convenient forum. If the defendant's position is accepted, it would only be subject to suit in New York.

■ Where the physical connections between the forum asserting jurisdiction and the defendant are of a minimal nature, one of the most crucial factors to be considered is the extent to which the cause of action arose out of defendant's local activities. This problem has been considered by the California courts in the personal injury context in Cosper v. Smith & Wesson Arms Co., 53 Cal.2d 77, 346 P.2d 409, and Fisher Governor Co. v. Superior Court, 53 Cal.2d 222, 225, 1 Cal. Rptr. 1, 347 P.2d 1. In *Fisher Governor*, supra, the Court stated that "[a]lthough a foreign corporation may have sufficient contacts with a state to

justify an assumption of jurisdiction over it to enforce causes of action having no relation to its activities in that state (citations omitted), more contacts are required for the assumption of such extensive jurisdiction than sales and sales promotion within the state by independent nonexclusive sales representatives." Id. at 225, 1 Cal.Rptr. at 3, 347 P.2d at 3. This language indicates that the existence of a significant state interest is crucial to sustain a finding of jurisdiction in this case.

■ Under the majority rule in defamation cases there would be a separate cause of action in each of the states where defendant's article was published. In this case the sale of the magazine in California would constitute a publication. The cause of action therefore stems from activities in this state, i. e., the sale of the magazine. It is quite likely that California law would be applied to the publications occurring in this state. See Howser v. Pearson, 95 F.Supp. 936, 937 (D.C.1951). Defendant argues that it was the activity of the independent distributor and not defendant which caused the publication in California. To some extent this is correct; however, these sales were directly foreseeable by the defendant, if not, in fact, *caused* by defendant. Other state interests are established by the plaintiff's California residence and the fact that the real locus of the injury in this type of litigation is the community where the plaintiff resides, since reputational damage is dependent upon community reaction.

■■ The defendant has cited numerous authorities which have denied jurisdiction under similar circumstances. In light of the present state of authority, a holding to the contra would appear to be somewhat novel, yet in this Court's opinion, it is justified. In Putnam v. Triangle Publications, Inc., 245 N.C. 432, 96 S.E.2d 445 (1957), the North Carolina Supreme Court held that there were insufficient contacts to justify jurisdiction in an even stronger fact situation than the instant case. The distribution system in that case, which was virtually identical to that prevailing here, had the additional fact that agents of Triangle Publications had made periodic business trips to North Carolina to supervise the promotion of their products. The Court's analysis of relevant precedents appears to be correct; however, it differs from the point of view previously expressed in this opinion in one significant respect. The North Carolina Court concluded that since the magazines were sold outside of the state, the cause of action was not related to defendant's activities within the state. In the opinion of this Court, such conclusion was erroneous and places undue emphasis on the mechanical aspects of the transaction. Although not directly in point, the decisions in Cosper v. Smith & Wesson Arms Co., 53 Cal.2d 77, 346 P.2d 409, and Waco-Porter Corp. v. Superior Court, 211 Cal.App.2d 559, 566, 27 Cal.Rptr. 371, indicate that in those situations which involve independent nonexclusive sales agents, the courts, as was done in the instant case, must look beyond defendant's sales activities in this state to determine whether jurisdiction may constitutionally be assumed.

Insull v. N. Y. World Telegram Corp., 273 F.2d 166 (7 Cir. 1959), is a further illustration of the view urged by defendants. Although the amount of defendant's sales in the *Insull* case, supra, was minimal by comparison to those in the instant case, the court did not emphasize that point. The opinion concludes that there are no contacts where the sale is controlled by independent corporate distributors who purchase outside of the forum.

This view, which expresses a substantial weight of authority, as heretofore indicated, places undue emphasis on the mechanical aspects of the transaction, and in this Court's opinion, ignores the realities of modern interstate business. Here it is clear that the tort is directly related to the sale of the magazine in California. It does not seem contrary to fair play and substantial justice to require the defendant to accept responsibili-

ty for results (substantial sales in this state), which are reasonably foreseeable and the basic objective of its business.

The Supreme Court of Illinois adopted a point of view substantially similar to the one advanced in this opinion in Gray v. American Radiator & Standard Sanitary Corporation, 22 Ill.2d 432, 176 N.E. 2d 761 (1961). In that case the court upheld the application of the Illinois single act statute (Ill.Rev.Stat.1959, Chap. 110 par. 16 & 17) to a manufacturer whose product had reached Illinois by way of a middleman.

In the *Gray* case, supra, the defendant manufacturer had sold its product to another company outside of Illinois. The defendant's product was then incorporated with the original purchaser's and sold to the ultimate consumer in Illinois. Once in Illinois, the completed product exploded, causing injury to an Illinois resident. The majority of the court's opinion in the *Gray* case is devoted to a discussion of the constitutional question, rather than the application of the Illinois statute. In discussing defendant's claim that the product had been sold by a middleman, the court stated:

> " * * * Where the alleged liability arises, as in this case, from the manufacture of products presumably sold in contemplation of use here, it should not matter that the purchase was made from an independent middleman or that someone other than the defendant shipped the product into this State.
>
> \* \* \* \* \* \*
>
> "As a general proposition, if a corporation elects to sell its products for ultimate use in another State, it is not unjust to hold it answerable there for any damage caused by defects in those products. * * * " id. at 766.

It may be argued that the decision of the Illinois court in *Gray*, supra, is not relevant to the problem at hand because of the special form of jurisdictional statute which has been adopted by the Illinois legislature. In light of the language in Fisher Governor Co. v. Superior Court, 53 Cal.2d 222, 1 Cal.Rptr. 1, 347 P.2d 1,

equating the limitations of the California statute with the constitutional boundaries of the due process clause, that argument is not persuasive. This approach adopted by the Illinois court appears to be sound and comes within the "clearly discernible" trend "toward expanding the permissible scope of state jurisdiction over foreign corporations or other nonresidents", and on the facts of the case before this Court, a finding of jurisdiction would not offend "traditional notions of fair play and substantial justice."

The motions to quash the summons, dismiss the complaint and for summary judgment are denied.