RONALD ZIELINSKI, Plaintiff-Appellant, v. A. EPSTEIN & SONS INTERNATIONAL, INC., *et al.*, Defendants-Appellees.

First District (2nd Division)   No. 88—1159

Opinion filed February 7, 1989.

Andrew D. Werth, of Susan E. Loggans & Associates, of Chicago, for appellant.

Clinton J. Feil, of Kiesler & Berman, of Chicago, for appellee Chell and Anderson, Inc.

Mark C. Friedlander, of Neal, Gerber, Eisenberg & Lurie, of Chicago, for appellee A. Epstein & Sons International, Inc.

JUSTICE SCARIANO delivered the opinion of the court:

Plaintiff seeks recovery of damages for injuries sustained when he fell through an access door in the suspended ceiling of a room at a manufacturing plant owned by his employer, the Jewel Food Company (Jewel). Defendants on appeal are A. Epstein & Sons International, Inc. (Epstein), and Chell and Anderson, Inc. (Chell), the architect and the general contractor, respectively, of the structure in which plaintiff was working. The trial court granted the defendants' motion for summary judgment on the ground that plaintiff's action was time barred by the applicable statute of limitations (Ill. Rev. Stat. 1983, ch. 110, par. 13—214(b)), inasmuch as the ceiling and access doors were installed more than 12 years prior to plaintiff's accident. The issue here is whether summary judgment lies where a dispute exists between the parties as to when the statute of repose begins to run.

On December 5, 1983, plaintiff was severely injured as he worked on Jewel's refrigeration systems at its Hillfarm Dairy plant in Melrose Park, Illinois, where he was working as a refrigeration maintenance specialist. Plaintiff had entered the ceiling above the refrigeration units through an access panel located immediately above a permanent ladder attached to the wall. After he had repaired a valve located above the refrigeration units, he walked back to the access panel from

which he had entered the ceiling. As he made his way back to that panel, he stepped on a second one, which swung open, causing plaintiff to fall approximately 20 feet to the floor below.

All work on the project was completed during the week ending June 11, 1971, and the building inspector of Franklin Park[1] granted Jewel an occupancy permit on August 9, 1971. According to Epstein's records, as of December 1971 the only item not completed on the project was entitled "Approve final payout, job closed."

On November 8, 1984, plaintiff filed his complaint against Epstein and Chell, and on May 1, 1987, Epstein filed a motion for summary judgment, in which Chell joined. With its motion Epstein submitted the deposition testimony of Edward A. Whalen of the subcontracting firm of Dewey and Whalen, in which he stated that all work performed by his firm was completed by December 5, 1971; Jewel's answers to interrogatories, and its response to Epstein's request to admit, including a letter regarding the occupancy permit issued to Jewel by the Village of Franklin Park on August 9, 1971. The trial judge granted the defendants summary judgment and later denied the plaintiff's motion for reconsideration, from which he now appeals.

■■ The applicable statute of limitations is contained in section 13—214(b) of the Code of Civil Procedure (Ill. Rev. Stat. 1983, ch. 110, par. 13—214(b)), the relevant portion of which provides:

> "(b) No action based upon tort, contract or otherwise may be brought against any person for an act or omission of such person in the design, planning, supervision, observation or management of construction, or construction of an improvement of real property after 12 years have elapsed from the time of such act or omission."

Both plaintiff and defendants agree that the plaintiff's accident occurred on December 5, 1983; thus, the critical date insofar as the statute of repose is concerned is December 5, 1971, 12 years prior to the date of the accident.

Plaintiff advances the thesis that the very last act associated with the construction of the ceiling was the final exchange of paperwork, which occurred on June 5, 1972, and that, therefore, the applicable statute of limitations would not commence to run until that date. Plaintiff adds that the statute of limitations does not begin to run when a contract is executed, but when it terminates, citing *Hanover*

---

[1]Although plaintiff's complaint gives the Village of Melrose Park as the site of the Jewel plant, the occupancy permit appears to have been issued by the Village of Franklin Park.

*Shoe v. United Shoe Machinery Corp.* (1968), 392 U.S. 481, 20 L. Ed. 2d 1231, 88 S. Ct. 2224; consequently, the contract for the construction project at the Hillfarm Dairy plant did not terminate until June 5, 1972. Plaintiff further adds that according to *Gray v. American Radiator & Standard Sanitary Corp.* (1961), 22 Ill. 2d 432, 176 N.E.2d 761, a tort action accrues when the last act creating liability occurs, which in the instant case would be the final closing of the contract, *i.e.*, June 5, 1972.

Plaintiff maintains that since defendants' motion for summary judgment is not supported by affidavit, deposition, or other testimony as to when their duties under the contract were completed, summary judgment should have been denied. (*Cato v. Thompson* (1980), 83 Ill. App. 3d 321, 403 N.E.2d 1239.) He also points out that the defendants admitted that they conducted activities after December 5, 1971, but sought to explain them as a mere exchange of paper work; thus, he asserts, these facts go to prove that the general contractor had a presence on the jobsite and maintained control over the project until its completion, which was after December 5, 1971; therefore, he is entitled to judgment. Finally, plaintiff posits that "[t]he continuation of a special relationship offering the possibility of correction of the injury may postpone [the critical] date further" (*Cooper v. United States* (7th Cir. 1971), 442 F.2d 908, 912); accordingly, since defendants were under a duty to correct any problems until the closing date, June 5, 1972, that should be the critical date.

Epstein argues that in its deposition, the subcontractor stated that the design and construction of the suspended ceiling was completed by May 10, 1971, well before the critical date of December 5, 1971. Therefore, Epstein reasons, any design or construction defect related to the suspended ceiling must have occurred earlier; hence, any claim regarding such a defect would be barred by the statute of repose. Epstein also refers to the occupancy permit issued for the building by the Village of Franklin Park on August 9, 1971, contending that this proves that the construction of the entire facility, including the suspended ceiling and the area around it, was completed prior to December 5, 1971.

In addition, it claims that certain documents contained in its file relied upon by plaintiff in his opposition to its motion for summary judgment fail to establish that the design or construction of the suspended ceiling occurred after December 5, 1971; on the contrary, it asserts, those documents clearly establish that the construction of the entire building had been completed by December 1971. For example, in one of the documents, the following note appears: "Only No. 86 left since December 1971." Item No. 86 is the only item without a check

mark beside it to indicate that it had been completed; rather, it reads: "Approve final payout—job closed." Furthermore, Epstein avers, at the bottom of page 3 of the documents is a list of every date on which it visited the construction site, the last of which is November 11, 1971. Epstein admits that pages 4 and 5 of the documents indicate that some activity occurred through April of 1972; however, the descriptions of these items clearly show that they involved paperwork only, and not actual construction. Every item after December 5, 1971, refers either to "closing out the job" or to obtaining guarantees from the appropriate contractors or material suppliers. Epstein argues that both of these items are clerical.

Lastly, Epstein urges that the statute of repose begins to toll when the allegedly wrongful act is committed, not when unrelated construction is finally completed, and that the statute does not make any reference to the "project" in its entirety. Rather, Epstein maintains, the statute focuses on the precise act or omission which gives rise to liability. Epstein contends that to adopt the plaintiff's position would strip the statute of all vitality by creating a never-ending liability, since presumably, plaintiff would claim that a party has an unremitting duty to rectify past negligent acts.

■ Chell argues that when the statute of repose is applied to the facts in this case, the trial court must be held to have decided correctly that the "act or omission" referred to therein was the work completed by the subcontractor who left the job more than 12 years before plaintiff's accident. Chell maintains that it is a basic rule of statutory construction that the language of a statute must be given its plain and ordinary meaning, and that courts should first look to the statutory language itself for such an interpretation. (*County of Du Page v. Graham, Anderson, Probst & White, Inc.* (1985), 109 Ill. 2d 143, 485 N.E.2d 1076.) Chell adds that once the construction of the improvement has been terminated, the 12-year statute of repose begins to run; that there is nothing in the act to suggest that other dates, unrelated to the actual building of the structure, should be considered; and that since there is no genuine issue as to the completion of that installation more than 12 years before plaintiff's injury, the trial court properly granted summary judgment.

■ Chell cites the well-established principle that statutes are construed to determine and give effect to the intent of the legislature, and that courts do not seek an interpretation which would render any portion of an act meaningless or void. (*Harris v. Manor Healthcare Corp.* (1986), 111 Ill. 2d 350, 489 N.E.2d 1374.) It contends that plaintiff's interpretation fails to give effect to the intent of the statute that

claims be barred if they arise more than 12 years after the "act or omission" referred to therein; moreover, under plaintiff's interpretation of the act, the 12 years would be difficult to determine at best, and impossible to determine at worst.

Chell poses several hypothetical cases to illustrate the error it alleges to be inherent in plaintiff's argument. For instance, Chell notes that the time of completion of construction of a particularly large project involving several buildings would be arbitrarily extended until the last payment for the last building was made, even if construction at the locus of plaintiff's injury had been completed many years earlier. Or, if an owner failed to make payment because of his personal financial situation, this, too, would arbitrarily extend the time of commencement of the 12-year statutory period and create liability in perpetuity. Such a contract, it charges, would never be final or completely closed.

■ We hold that the trial court properly granted the defendants' motion for summary judgment. Plaintiff's entreaty that the statute of limitations did not begin to run until the last act associated with the construction of the ceiling was completed is unconvincing, and his citing of *Hanover Shoe v. United Shoe Machinery Corp.* (1979), 392 U.S. 481, 502 n.15, 20 L. Ed. 2d 1231, 1246 n.15, 88 S. Ct. 2224, 2236 n.15, for the proposition that the statute of limitations begins to run when a contract terminates is incongruent with a reading of that case. First, *Hanover* was an antitrust case and is distinguishable on its facts alone. Second, plaintiff's understanding that footnote 15 of *Hanover* holds that a statute of limitations does not begin to run until a contract is terminated is also palpably in error. Footnote 15 states:

> "We are not dealing with a violation which, if it occurs at all, must occur within some specific and limited time span. [Citation.] Rather, we are dealing with conduct which constituted a continuing violation of the Sherman Act and which inflicted continuing and accumulating harm on Hanover. *Hanover*, 392 U.S. at 502 n.15, 20 L. Ed. 2d at 1246 n.15, 88 S. Ct. at 2236 n.15.

In addition, plaintiff mistakenly relies on *Gray v. American Radiator & Standard Sanitary Corp.* (1961), 22 Ill. 2d 432, 176 N.E.2d 761, as authority for his argument that a tort action accrues when the last act creating liability occurs. The *Gray* court's decision involved determination of whether a tortious act was committed in a particular State for the purpose of deciding whether the tortfeasor was subject to that State's jurisdiction. The court held,

> "[T]he place of a wrong is where the last event takes place which is necessary to render the actor liable." (*Gray*, 22 Ill. 2d at 435.)

Thus, since *Gray* is clearly unrelated to the time of commencement of a statute of limitations, it cannot be relied upon by the plaintiff for any purpose in the instant case.

For his contention that the defendants' motion for summary judgment was not substantively documented, as indicated above, plaintiff cites *Cato v. Thompson* (1980), 83 Ill. App. 3d 321, 403 N.E.2d 1239. But *Cato* holds that the motion for summary judgment there was not adequately supported because it relied on unsworn and unsigned statements. The defendants in the case at bar, however, relied on deposition testimony, as well as answers to interrogatories, evidence which is hardly unsworn and unsigned. Nor can it be successfully contended that such supporting documents were lacking in substance.

The plaintiff argues that he proved that the general contractor had a presence on the jobsite and maintained control over the project until its closing date, June 5, 1972; hence, he was entitled to judgment. On the contrary, the only thing that plaintiff succeeded in proving was that the project was not closed out before December 5, 1971. Plaintiff puts forth no evidence whatsoever showing that the general contractor or the subcontractor was not finished with construction by December 5, 1971. Indeed, the defendants conclusively establish that construction was complete by the critical date and that only paper work remained after that date.

Plaintiff's final argument is that the defendants were under a duty to correct any problems up to the closing date, and that this postponed the critical date further, citing *Cooper v. United States* (7th Cir. 1971), 442 F.2d 908. However, the *Cooper* court was discussing a Federal statute, 28 U.S.C. 2401(b) and said, "But the existence of even a continuing relationship does not insure that a cause of action should be deemed continuous for purposes of computing the limitations period." 442 F.2d at 912.

We find that the defendants' arguments are completely tenable. It is indisputable that work had ended on the ceiling before the critical date of December 5, 1971, and since no genuine issue of material fact exists in this case, the defendants were entitled as a matter of law to summary judgment.

For the foregoing reasons the judgment of the circuit court of Cook County is affirmed.

Affirmed.

HARTMAN and BILANDIC, JJ., concur.