Richard and Yael **TOMASHEVSKY**, Plaintiffs,

v.

**KOMORI PRINTING MACHINERY CO., LTD., and Imperial Equipment, Inc., Defendants.**

No. 87-7018-CIV-JAG.

United States District Court, S.D. Florida, Fort Lauderdale Division.

June 27, 1989.

Milton S. Blaut, Abrams, Anton, Robbins, Resnick, Schneider and Mager, P.A., Hollywood, Fla., for plaintiffs.

Karen L. Stetson, Miami, Fla., for Komori, Shutts & Bowen.

## ORDER

GONZALEZ, District Judge.

THIS CAUSE has come before the court upon the parties' cross-motions for summary judgment.

By order dated August 16, 1988, this court dismissed the defendant Imperial Equipment, Inc. for lack of personal jurisdiction. The other defendant, Komori Printing Machinery Co., has now moved for dismissal on the same ground.

The procedural posture of this case is important. On September 8, 1988, the defendant Komori filed its motion to dismiss for lack of personal jurisdiction. Komori stated that it is a Japanese company selling printing presses to American dealers with "whom it has contractual relationships throughout the United States." It also denies that it has any such dealer in Florida, advertises in this state, or has an office in the state. The printing press in this case which allegedly injured the plaintiff was originally sold by Komori to Imperial Equipment, Inc. in California. The press was then sold by Imperial to Blue Ridge Printing Co. in North Carolina. Thereafter, Blue Ridge sold it to Delta Printing in Hollywood, Florida, who employed the plaintiff Richard Tomashevsky.

The plaintiffs filed their response to the motion to dismiss on September 16. They stated that the basis for the assertion of jurisdiction over Komori is the sole fact that the defendant placed the product in interstate commerce. The plaintiffs contend that this fact raises an inference that Komori knew or should have known that the product would find its way into Florida.

On October 14, 1988, the defendant Komori filed the affidavit of Mitsuhiko Gotoh, a Komori employee, to support the factual assertions made in the motion to dismiss. By order dated Oct. 31, 1988, this court granted leave to the plaintiff to take the telephone deposition of Gotoh and allowed the plaintiff an extension of time until after the deposition to file their Reply.

The plaintiff subsequently moved to strike Gotoh's affidavit written in the English language because there was no interpreter's certificate attached to the affidavit. On its face, the affidavit stated that Gotoh did not speak English. The motion to strike was granted and the defendant was ordered to file a new affidavit.

The defendant filed a new affidavit of Gotoh on April 24, 1989. This affidavit includes a translator's certificate.

The plaintiffs filed a status report on April 24, 1989 in which they revealed that they had still not taken the deposition of Gotoh, even though they had so moved in October 1988. Even though the affidavit was invalid, the plaintiffs have held up discovery in this case for six months.

In the same status report of April 24, 1989, the plaintiffs raise two other points. First, plaintiffs claim that the defendant Komori is subject to this court's jurisdiction for its previously stated reasons, in addition to the statement in Gotoh's new affidavit that Komori, "distributes its products through distributors and dealers with whom it has contractual relationships throughout the United States." Second, the status report contends that the plaintiff propounded interrogatories in April 1989 to discover Komori's knowledge that its products could reasonably be expected to enter Florida. These discovery requests are certainly untimely in light of the above noted delays caused by the plaintiffs.

On May 4, 1989, the plaintiffs then moved for summary judgment apparently abandoning their earlier espoused need for further discovery. In fact, their motion states that, "there is no genuine issue as to any material fact concerning the issue of personal jurisdiction over the Defendant." Plaintiffs' motion for summary judgment at 3.

Although the plaintiffs miscite the appropriate section of the Florida longarm statute relied upon, it is clear that the section

at issue is Fla.Stat. § 48.193(1)(f), which provides:

(1) Any person, whether or not a citizen or resident of this state, who personally or through an agent ...

(f) Cause[s] injury to persons or property within this state arising out of an act or omission by the defendant outside this state, if at or about the time of the injury, either:

1. The defendant was engaged in solicitation or service activities within this state; or

2. Products, materials, or things processed, serviced, or manufactured by the defendant anywhere were used or consumed within this state in the ordinary course of commerce, trade, or use.

Because there is no allegation that Komori has solicited or engaged in service activities within Florida (indeed, the Gotoh affidavit is to the contrary), the applicable section is subsection (2). However, the plaintiffs offer no new facts to justify personal jurisdiction over Komori other than the prevous allegation that the product was placed in interstate commerce.

On May 10, 1989, the defendant filed its response to the plaintiffs' motion for summary judgment and made a cross-motion for summary judgment on the issue of personal jurisdiction. While the plaintiffs focus entirely on the Florida longarm, the defendants also note the due process prong of an appropriate analysis. Komori's main arguments are that it has not purposefully directed acts towards Florida, and that the facts, as alleged by the plaintiffs, do not constitute minimum contacts such that it reasonably expected to be haled into a Florida court. Komori notes the fact that the press in question here was resold twice after it left Komori's hands in California and argues that it would "have had to have been psychic to know that this printing press would ultimately reside in Florida."

In its reply, the plaintiffs renew their request to take discovery through interrogatories as to the issue of Komori's control over its U.S. distributors. The plaintiffs also move for oral argument on the motions.

■ The first issue is whether the plaintiffs' request for additional discovery pursuant to Federal Rule 56(f) should be granted. Even given the liberal standard of the rule, the plaintiffs' motion must be denied. The court accepts the plaintiffs' own, explicit (page 3 of their response) and implicit (it was the plaintiffs who moved for summary judgment) statements that the motions for summary judgment on the jurisdictional issue are ripe.

Plaintiffs have delayed disposition of the defendant Komori's motion to dismiss by a supposed need to take Gotoh's deposition. They never did so. They waited until April of 1989 to even file interrogatories. The plaintiffs cannot claim Gotoh's new affidavit surprised them since it contains *no* new facts. Moreover, the docket shows that the plaintiffs noticed the deposition of Blue Ridge early in this litigation. This was the company which sold the press to the Florida buyer. If Komori had any contact over Blue Ridge, the plaintiffs should have brought the factual support forward prior to this time. In the alternative, they certainly have waived any need for further discovery by their dilatory actions.

On the merits, there are two inquiries, (1) whether the Florida longarm is applicable, and (2) does 14th Amendment due process allow for the assertion of jurisdiction even if the Florida statute does apply.

■ Technically, the plaintiffs fit within the longarm. They can argue that the plaintiff was injured in Florida by Komori, who manufactured the product outside the state, and the printing press was "used" here "in the ordinary course of commerce, trade, or use".

The plaintiffs rely upon the oftcited Florida Supreme Court case of *Ford Motor Co. v. Atwood Vacuum Machine Co.*, 392 So. 2d 1305 (1981). The case involves the following facts. Elizabeth Westerling, the plaintiff, was injured by the rear door of her Ford station wagon. She sued Ford and the local Ford dealer who sold her the car. This aspect of the case was settled

among the parties. Prior to the settlement, Ford moved for leave to file a third-party complaint against Atwood, who manufactured the door hinge assembly alleged by Ford to be the source of Westerling's injuries. The trial court found that Ford could not exercise jurisdiction over Atwood, an Illinois corporation, since it lacked minimum contacts with Florida. The Supreme Court reversed on due process grounds. In the key part of the decision, the Supreme Court noted,

As *Gray v. American Radiator and Standard Sanitary Corp.* indicates, the fact that a nonresident manufactures a component part outside the state and takes no part in the sale, distribution, or marketing of the finished product in the state is no basis for a limitation on jurisdiction. (citations omitted) ... The Atwood company benefits from the protection Florida law provides Ford Motor Company in the marketing of its automobiles in Florida.

"We conclude that the Atwood Vacuum Machine Company's lack of direct presence and activity within the borders of Florida is no bar to our holding that the minimum contacts test of *International Shoe [Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945)] is met." 392 So.2d at 1313.

The plaintiffs rely on this case and the decision in *Gray v. American Radiator Corp.,* 22 Ill.2d 432, 176 N.E.2d 761 (1961). The defendants claim that *Atwood Vacuum* is distinguishable as a case involving a defendant doing continuous and systematic business in the state such as to subject it to all causes of action under a theory of general jurisdiction.

Both parties are partially incorrect.

In the jurisdictional analysis, Due Process requires two things. First, the defendant must have minimum contacts with Florida such that maintenance of the suit here does not offend traditional notions of fair play and substantial justice. Second, the plaintiff must show that the defendant acted to purposefully avail himself of the privileges of conducting activity in the state, thereby invoking the state's benefits and the protections of its law.

The *Atwood* case is consistent with these requirements. There, the third-party defendant Atwood knew that it was selling its parts to Ford Motor Company. It also knew or certainly should have known that the purchaser was a true national company which did substantial business in all states (or at least the 48 conterminous states). Finally, Atwood knew what it manufactured, door *components.* The product itself inherently requires joinder with another product to constitute a saleable good. The Florida Supreme Court recognized this vertical interdependence in its decision, when it stated that Atwood indirectly benefits when Ford markets and sells its automobiles in the state. These intentional acts to avail oneself of a national market by associating with a national distributor certainly constituted purposeful acts directed at Florida, such as not to offend "fair play" if suit was filed here.

Such is not the case here. Komori sells a finished product, not a component to be incorporated into other products to be sold down the line. It associates with a series of American distributors, but does so on a state-by-state basis. The plaintiffs have shown no evidence that any of the distributors direct their sales at Florida. This fact is different from *Atwood* where the hinge manufacturer associated with a national distributor with undisputed knowledge that its hinges would inevitably reach every state.

Moreover, there is a horizontal distribution scheme here, as opposed to the vertical scheme in *Atwood.* The printing press is sold only once and there is no expectation that it will be resold except by the initial distributor. In this case, Komori sold to Imperial who resold to Blue Ridge. If the plaintiff incurred injuries in North Carolina, this might be a different case. The *Atwood* Court reasonably imposed liability because of the inherent knowledge possessed by Atwood that its product was to be incorporated in a nationally marketed good. This is similar to the *American Radiator* case where an Ohio company manufactured valves for water heaters and sold its component product to another company which incorporated it in the finished

product. The boiler injured the plaintiff in Illinois and suit was filed there. The Illinois Supreme Court held that the Ohio company was subject to its jurisdiction.

Further, to some extent, the holdings in *Atwood* and *American Radiator* are in doubt since both cases predate important, subsequent decisions.

This case is analogous to the facts in *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). The defendants there were distributors of the car who only sold their products in three states (New York, New Jersey, and Connecticut). The car was sold to other defendants in New York who then drove the car to Oklahoma. An accident occurred in Oklahoma with Oklahoma plaintiffs and suit was filed in that state. A majority of the Supreme Court held, that mere foreseeability is an insufficient basis for the assertion of personal jurisdiction. In that case, the mere fact that the defendant car dealers could have foreseen that their product, a car with inherent mobility, might be driven to other states, did not constitute a minimum contact with those states.

This foreseeability argument rejected in *Woodson* is identical with the plaintiffs' argument here. The mere fact that Komori could foresee that a purchaser, after the initial sale of the press by the distributor, would resell the product to plaintiffs' employer in Florida is not a sufficient basis for haling them into court here.

Moreover, there is certainly no basis for holding that Komori purposefully directed its activities towards Florida. Komori made all of its money with the initial sale to its distributor. While the first sale to the initial buyer, Blue Ridge, may have been made with the same profit motive as Atwood had in regards to the sale of its product to Ford with an inevitable resale to a consumer, the resale to the Florida purchaser here was not a purposeful contact by Komori. The analogous case in *Atwood* would be if Atwood was sued in Florida after Ford sold the new car to Westerling *and she resold the new car to another consumer in this state.* Such were not the

facts in *Atwood* as the plaintiff was the original purchaser and the car was new.

The other post-*Atwood* decision which is important to note here is *Asahi Metal Industry Co., Ltd. v. Superior Court*, 480 U.S. 102, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987). There, the plaintiff Zurcher lost control of his motorcycle because of a defective tire. He sued the tire's manufacturer, Cheng Shin Rubber Industrial Co., Ltd., a Taiwanese company. Cheng Shen filed a third-party complaint against Asahi, the manufacturer of the tube's valve assembly. Zurcher's claims against Cheng Shin settled and the indemnity claim remained.

A plurality of the Supreme Court noted the language from *World–Wide Volkswagen* which the plaintiffs rely upon here, "The Court [in *World–Wide*] disclaimed, however, the idea that 'foreseeability is wholly irrelevant' to personal jurisdiction," concluding that "[t]he forum State does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce *with the expectation* that they will be purchased by consumers in the forum State." (emphasis added). 107 S.Ct. at 1031.

The *Asahi* plurality made clear, however, that this language had to be read in conjunction with the requirement that the defendant purposefully direct his activities towards the forum state. The plurality noted that, "The placement of a product into the stream of commerce, without more, is not an act of the defendant purposefully directed toward the forum State ... [A] defendant's awareness that the stream of commerce may or will sweep the product into the forum State does not convert the mere act of placing the product into the stream into an act purposefully directed toward the forum State." 107 S.Ct. at 1033.

Accordingly, the plurality held that personal jurisdiction could not be constitutionally asserted over Asahi.

An argument which the plaintiffs do not address but which is raised by the case of *DeJames v. Magnificence Carriers, Inc.*,

654 F.2d 280, 283 (3rd Cir.1981), and a footnote in the plurality portion of the *Asahi* opinion is the issue of whether Congress could, consistent with Fifth Amendment Due Process dictates, authorize federal court jurisdiction over alien defendants based on the aggregate of *national* contacts, rather than on the contacts between the defendant and the State in which the federal court sits. Such a statute would be of immense aid to the plaintiffs in this case given that Komori is a Japanese company with more significant contacts in terms of the nation than the state of Florida. However, since Congress has not acted, this argument is moot.

Having considered the above matters and the record in this case, it is hereby

ORDERED AND ADJUDGED as follows:

(1) The plaintiffs' motion for summary judgment and the motion for oral argument on the motion is DENIED.

(2) The motion for summary judgment of the defendant Komori Printing Machinery Co., Ltd. is hereby GRANTED. This cause shall stand DISMISSED for lack of personal jurisdiction over the defendant Komori.

(3) The plaintiffs' motion for additional discovery pursuant to Federal Rule of Civil Procedure 56(f) is hereby DENIED for the reasons stated above.

DONE AND ORDERED.