[Civ. No. 12033. Third Dist. Dec. 19, 1968.]

A. R. INDUSTRIES, INC., Petitioner, v. THE SUPERIOR
 COURT OF SACRAMENTO COUNTY, Respondent;
 FRANK CERVANTES, Real Party in Interest.

Rust, Hoffman & Mills, John Gilmore and Michael C. Gessford for Petitioner.

No appearance for Respondent.

O'Connor & Sevey and Jack Charles Sevey for Real Party in Interest.

PIERCE, P. J.—Petitioner, A. R. Industries, Inc., an Ohio corporation, seeks a writ of mandate to require the Sacramento County Superior Court to quash service of summons. Service was pursuant to Code of Civil Procedure section 411, subdivision 2, upon the theory that defendant was "doing business" in this state. After reviewing the evidence, we have concluded that Industries' contention that service offended the due process clause of the Fourteenth Amendment cannot be sustained.

The pending action was brought by Cervantes, the real part in interest. The action was based upon bodily injuries allegedly caused to him by a defective buffing machine. That machine was one of three 3.8-ton buffing machines manufactured in 1965 by Industries in its home state, Ohio, and pur-

chased by Formica, a subsidiary of American Cyanamid, a New Jersey corporation. All transactions regarding the purchase and sale were handled between the seller and the buyer in either New Jersey or Ohio. The sale was the result of a call for bids by Formica. After manufacture the three machines had been shipped by Industries direct to Formica's plant in California by common carrier f.o.b. such plant. The contract was not completed until delivery of the machines. They were not sent on consignment. Industries retained no title. They were sold for use and not for resale. Installation was by Formica. Industries was not qualified to transact business in California. Industries owned no property here. It had no California offices or representatives. It advertised, however, in national advertising media. It had previously delivered at least one of its products, a cement lintel machine, in California. No contention is made in the main action that Industries did not receive substituted service seasonably.

Historically the jurisdiction of courts to render in personam judgments "is grounded on their de facto power over the defendant's person. Hence his presence within the territorial jurisdiction of a court was prerequisite to its rendition of a judgment personally binding him. *Pennoyer* v. *Neff*, 95 U.S. 714, 733 [24 L.Ed. 565, 572]. ▮ But now . . . due process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have *certain minimum contacts* with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' [Citations.]" (Italics ours.) (*International Shoe Co.* v. *Washington*, 326 U.S. 310, 316 [90 L.Ed. 95, 102, 66 S.Ct. 154, 161 A.L.R. 1057].)

▮▮ *International Shoe* was cited and its concept was repeated thusly by our Supreme Court in *Fisher Governor Co.* v. *Superior Court* (1959) 53 Cal.2d 222, at page 224 [1 Cal. Rptr. 1. 347 P.2d 1]; "Code of Civil Procedure, section 411, subdivision 2. authorizes service of process on foreign corporations that are 'doing business in this State.' That term is a descriptive one that the courts have equated with such minimum contacts with the state "that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' " . . . *Whatever limitation it imposes is equivalent to that of the due process clause.* " ' [D]oing business' within the meaning of section 411 of the Code of Civil Procedure is synonymous with the power of the state to subject

foreign corporations to local process."' [Citations.]" (Italics ours.)

A balancing process takes place when, after establishing the fact that "minimum contacts" have occurred within the forum state, the courts try to determine whether such contacts reach a status adequate to satisfy "traditional notions of fair play and substantial justice," or as it has been otherwise expressed, "the fair and orderly administration of the laws which it was the purpose of the due process clause to insure." (*International Shoe Co.* v. *Washington, supra,* at p. 104 of 90 L.Ed.) Due process is not met, of course, when a court of the forum attempts to make a binding "in personam" judgment against an individual or corporate defendant with which the state has no "contacts, ties, or relations." On the other hand, to the extent that a foreign corporation exercises the privilege of conducting activities within a state it derives benefits and protection of the laws of the state which may justly give rise to corresponding obligations connected with those activities. A suit brought to enforce such obligations "can, in most instances, hardly be said to be undue." (*International Shoe Co.* v. *Washington, supra,* at p. 104.)

 *Fisher Governor Co.* v. *Superior Court, supra,* 53 Cal. 2d 222, reviews many factors which courts have considered relevant in the balancing process suggested above. These are, as stated on pages 225-226: the interest of the state in providing a forum for its residents; the relative availability of evidence and the burden of defense and prosecution in one place rather than another; the ease of access to an alternative forum; the avoidance of multiplicity of suits and conflicting adjudications; *and the extent to which the cause of action arose out of defendant's local activities.* In *Fisher* the action, similar to the action with which we are concerned, arose from injuries sustained from allegedly defective equipment manufactured by the defendant. Unlike the instant case, however, the cause of action did not arise in California; it arose in Idaho. Our Supreme Court there deemed defendant's "minimum activities" (sales of its products through manufacturers' agents) sufficient to have satisfied due process had the cause of action related to the defendant corporation's activities within this state. It cited *Cosper* v. *Smith & Wesson Arms Co.* (1959) 53 Cal.2d 77 [346 P.2d 409], where the cause of action *had* arisen in California (injuries from a defective

gun), and where under ''essentially similar sales activities'' jurisdiction in California was sustained. In *Fisher,* however, for the reason stated, California jurisdiction was denied. The court states on page 226 : ''. . . Evidence can be produced as easily or more easily elsewhere, and even if plaintiffs cannot secure jurisdiction over Fisher in Idaho, they can prosecute their actions against Fisher as conveniently in Iowa as here.'' The opinion also points out that there was no evidence in the record to support the contention ''that jurisdiction over Fisher's codefendants can only be secured in California.'' Thus, ''duplicity of litigation'' did not appear.

In *McGee* v. *International Life Ins. Co.* (1957) 355 U.S. 220 222-223 [2 L.Ed.2d 223. 226, 78 S.Ct. 199], it is said: ''Looking back over this long history of litigation a trend is clearly discernible toward expanding the permissible scope of state jurisdiction over foreign corporations and other nonresidents. In part this is attributable to the fundamental transformation of our national economy over the years. Today many commercial transactions touch two or more States and may involve parties separated by the full continent. With this increasing nationalization of commerce has come a great increase in the amount of business conducted by mail across state lines. At the same time modern transportation and communication have made it much less burdensome for a party sued to defend himself in a State where he engages in economic activity.'' In *McGee* the original life insurance contract was made in a state other than California between plaintiff's decedent and defendant's predecessor. Defendant, a foreign corporation, reinsured and mailed a certificate of reinsurance to decedent, then a resident of California. In holding defendant amenable to the jurisdiction of the California courts the opinion in *McGee* makes this observation (on p. 226 of 2 L.Ed.2d) : ''. . . It cannot be denied that California has a manifest interest in providing effective means of redress for its residents when their insurers refuse to pay claims. These residents would be at a severe disadvantage if they were forced to follow the insurance company to a distant State in order to hold it legally accountable. When claims were small or moderate individual claimants frequently could not afford the cost of bringing an action in a foreign forum—thus in effect making the company judgment proof. Often the crucial witnesses—as here on the company's defense of suicide—will be found in the insured's locality. Of course there may be inconvenience to the insurer if it is held

amenable to suit in California where it had this contract but certainly nothing which amounts to a denial of due process.'' *McGee* involved a single transaction, a contract reaffirmed in California; the case before us involves a history of at least two deliveries. There are numerous ''flow of products in the stream of commerce'' cases. One of them is *Regie Nationale Des Usines Renault* v. *Superior Court* (1962) 208 Cal.App.2d 702 [25 Cal.Rptr. 530] (hear. den.), a decision of this court. It holds that a corporation created and owned by the French government which manufactured Renault automobiles and sold them to a New York corporation, a wholly owned subsidiary, who sold to various American distributors who sold to dealers who sold to consumers in California, could not by marketing through a ''hierarchy'' of agents insulate itself against assertion of California jurisdiction. (Cf. *daSilveira* v. *Westphalia Separator Co.* (1967) 248 Cal.App.2d 789 [57 Cal. Rptr. 62].)

It is to be noted that in *Hanson* v. *Denckla* (1968) 357 U.S. 235 [2 L.Ed.2d 1283, 78 S.Ct. 1228], the court, while acknowledging the trend discussed in *McGee* v. *International Life Ins. Co., supra* (p. 1296 of 2 L.Ed.2d), warns that it is a mistake to assume that it ''heralds the eventual demise of all restrictions on the personal jurisdiction of state courts.'' However, minimal the burden of defending in a foreign tribunal, a defendant may not be called upon to do so unless he had had ''minimal contacts'' with the forum state. That is a prerequisite to its exercise of power over such defendant. But while issuing that warning it is also said in pointing to ''fairness'' as the test of subjecting the defendant to the foreign court's jurisdiction: ''. . . The making of a single contract or the commission of a single tort, within a jurisdiction may be a contact sufficient. . . .'' (See ''Development of the doctrine of *Pennoyer* v. *Neff* as regards jurisdiction over nonresident individuals and foreign corporations—Supreme Court cases,'' 2 L.Ed.2d 1664, 1666, 1665-1668.)

Most of what we have stated above has been cogently stated by our appellate court, Fifth District, in *Waco-Porter Corp.* v. *Superior Court* (1963) 211 Cal.App.2d 559 [27 Cal.Rptr. 371]. (See also *H. Liebes & Co.* v. *Erica Shoes, Inc.* (1965) 237 Cal.App.2d 25 [46 Cal.Rptr. 470].)

*Gray* v. *American Radiator & Standard Sanitary Corp.* (1961) 22 Ill.2d 432 [176 N.E.2d 761], is a frequently cited case. It involved a suit brought in Illinois against a foreign

manufacturer of an allegedly defective valve which had been incorporated into a water heater. The suit was for personal injuries suffered when the heater exploded. Both the valve and the heater had been manufactured outside Illinois, the valve had been installed into the heater outside Illinois, and the heater had been then sold and delivered into Illinois in the course of commerce. Defendant valve manufacturer maintained no agents in Illinois, and the record did not disclose whether or not defendant had done any other business in that state, either directly or indirectly.

A lower court order quashing service of summons was reversed. The court emphasized that the state has an interest in providing relief for its residents where their injuries have been caused by nonresidents having substantial contacts within the state. It stated that proof of a given volume of business was not a determinative factor (*McGee* is cited and discussed); that the question whether contacts are sufficient depends upon the facts of the particular case, in the determination of which mechanical formula and rules of thumb are not helpful to a decision as to what is fair and reasonable in the circumstances. The question to be answered, says the court, is: Has the defendant invoked the benefits and protections of the law of the forum? In discussing that question the opinion states (on p. 766): "With the increasing specialization of commercial activity and the growing interdependence of business enterprises it is seldom that a manufacturer deals directly with consumers in other States. The fact that the benefit he derives from its laws is an indirect one, however, does not make it any the less essential to the conduct of his business; and it is not unreasonable, where the cause of action arises from alleged defects in his product, to say that the use of such products in the ordinary course of commerce is sufficient contact with this State to justify a requirement that he defend here.

". . . Advanced means of distribution and other commercial activity have made possible these modern methods of doing business, and have largely effaced the economic significance of State lines. By the same token, today's facilities for transportation and communication have removed much of the difficulty and inconvenience formerly encountered in defending lawsuits. . . ."

The court also states that unless jurisdictional concepts are applied in recognition of technological and economic progress, such concepts, although they may have been reasonable

enough in a simpler economy, lose their relation to reality.

A California case which has cited *Gray* is the recent case of *Leach Co.* v. *Superior Court* (Oct. 1968) 266 Cal.App.2d 493 [72 Cal.Rptr. 216]. It involved an action brought for personal injuries sustained by a California resident when a garbage container toppled over. The manufacturer of the container was a foreign corporation. The appellate court granted a peremptory writ to quash service of summons under Code of Civil Procedure section 411, subdivision 2. We cannot quarrel with the result since there is nothing in the opinion showing how the garbage container got into California. We cannot tell therefore whether the manufacturer maintained minimum contacts here. It was stated the manufacturer ''maintained no office, agents or employees in California, solicited no sales and conducted no other activities within the state, and sold products manufactured in Wisconsin through an independent firm operating in New York City.'' The opinion states (on p. 494): ''There may well be no constitutional inhibition against the California court taking jurisdiction in these circumstances.'' (Citing, inter alia, *McGee* and *Gray*.) It goes on to say, however, that although acceptance of California jurisdiction possibly would not violate due process, it could not, as a matter of statutory interpretation, meet the requirement (Code Civ. Proc., § 411, subd. 2) which states that jurisdiction must depend upon the fact that the foreign corporation is '' 'doing business in this state.' '' The opinion in *Leach* overlooks that *Fisher Governor Co.* v. *Superior Court, supra,* 53 Cal.2d 222, equates '' 'doing business in this state' '' under section 411, subdivision 2, with the existence of such minimum contacts by the corporation within the state that the maintenance of the suit does not offend '' 'traditional notions of fair play and substantial justice.' '' That is the test of due process. As stated, *Fisher* expressly states that '' ' ''doing business'' within the meaning of section 411 . . . is synonymous with the power of the state to subject foreign corporations to local process.' '' We disagree therefore with the reasoning in *Leach*. (See *Bibie* v. *T. D. Publishing Corp.* (N.D. Cal. 1966) 252 F.Supp. 185, 191.)

We apply the principles of *International Shoe, McGee, Fisher, Cosper, Waco-Porter, Regie* and *Gray* to the facts of the case before us.

We have read the cases cited by petitioner; also we have examined numerous other cases. They are distinguishable

either upon the basis that in those cases there were "no contacts, ties, or relations" of the foreign corporation sought to be sued in California or, at most, contacts insufficient to meet the "traditional notions of fair play and substantial justice" required by due process. Some are distinguishable in that they antedate *International Shoe*. No point is served by further extension of this opinion to cite and distinguish all of these cases separately. Since principal reliance is placed upon *Yeck Mfg. Corp.* v. *Superior Court* (1962) 202 Cal.App.2d 645 [21 Cal.Rptr. 51], we note the following observation by the court therein (on p. 653) : "The record reveals nothing as to the extent of petitioner's deliveries in California or who, if any other persons, purchased their goods. . . . [T]he factual evidence shows nothing but a sale in Michigan to a California wholesaler . . . and the wholesaler making his own independent sales in this State of his own property to a retailer who in turn sold to Rowell." That distinguishes *Yeck* from the case at bench. (Whether it justifies a contrary rule, we do not have to. and do not, decide.)

▪ Industries maintained no office, owned no property, sent no traveling salesmen, into California. But it did *advertise* in national media and the products described above had been sold and delivered by Industries into California for use (as distinct from resale). We do not deem the fact decisive but the infrequency of California transactions may be related to the fact that these machines were manufactured to specification and were of a size and nature calculated to supply a restricted market. "Minimum contacts" in California were established. ▪ We turn to "traditional notions of fair play and substantial justice." Industries has benefited by, and received the protection of, the laws of California. It thus owed corresponding obligations. The cause of action arose here. We balance the inconvenience to Industries in coming into California to defend this suit against the probability that indispensable witnesses probably reside here, and we consider the cost, the difficulty, and perhaps the impossibility of ascertainment of truth of the merits of Cervantes' claim should he have to prosecute his claim in an eastern jurisdiction. The balancing scales tip heavily in favor of permitting Cervantes to maintain his cause of action in California. Industries by delivery of machines here—machines which, it must have known. would, if defective, cause injuries such as those claimed—should fairly come here to defend against this claim. Due process was satisfied. We cite the following cases holding

that deliveries in the stream of commerce subjected the corporation to the jurisdiction of the state of forum.[1]

The alternative writ of mandamus is discharged. The petition is denied.

Friedman, J., and Regan, J., concurred.

Petitioner's application for a hearing by the Supreme Court was denied February 13, 1969.

---

[1]See *Continental Oil Co.* v. *Atwood & Morrill Co.* (D. Mont. 1967) 265 F.Supp. 692; *Hutchinson* v. *Boyd & Sons Press Sales, Inc.* (D. Minn. 1960) 188 F.Supp. 876; *Phillips* v. *Anchor Hocking Glass Corp.* (1966) 100 Ariz. 251 [413 P.2d 732, 9 A.L.R.3d 1]; *Sheridan* v. *Cadet Chemical Corp.* (1963) 25 Conn.Supp. 17 [195 A.2d 766]; *Andersen* v. *National Presto Industries, Inc.* (1965) 257 Iowa 911 [135 N.W.2d 639]; *Foye* v. *Consolidated Baling Machine Co.* (Me. 1967) 229 A.2d 196; *Ehlers* v. *United States Heating & Cooling Mfg. Corp.* (1963) 267 Minn. 56 [124 N.W.2d 824]; *Metal-Matic, Inc.* v. *Eighth Judicial Dist. Court* (1966) 82 Nev. 263 [415 P.2d 617].