R. W. SAWANT & COMPANY, Plaintiff-Appellee, v. ALLIED PROGRAMS CORPORATION, Defendant-Appellant (Ben Kozloff, Inc., Counterplaintiff-Appellee, v. Allied Programs Corporation, Counterdefendant-Appellant).

First District (3rd Division)   Nos. 83—2470, 83—2743 cons.

Opinion filed December 28, 1984.

Wildman, Harrold, Allen & Dixon, of Chicago (Howard T. Brinton and Richard J. Hickey, of counsel), for appellant.

Myron M. Cherry and Peter Flynn, both of Cherry & Flynn, and J. Samuel Tenenbaum and David J. Eckert, both of Becker & Tenenbaum, both of Chicago, for appellees.

JUSTICE McNAMARA delivered the opinion of the court:

Plaintiff, R. W. Sawant & Company, and counterplaintiff, Ben Kozloff, Inc., brought this action in the circuit court of Cook County against defendant Allied Programs Corporation, a New York corporation, for breach of contract and fraudulent misrepresentation for failure to pay claims under a "rejection risk" insurance policy. After a default judgment was entered against Allied in favor of Sawant and an order of default was entered against Allied in favor of Kozloff, Allied filed a special appearance to contest the court's jurisdiction. The trial court denied Allied's motion to quash the service of summons. We granted Allied's petition for leave to appeal the interlocutory order denying the motion to quash Kozloff's service and consolidated the case with Allied's appeal of the order denying its motion to quash the service by Sawant.

Sawant is an Indian exporter of seafood, and Kozloff is an Illinois corporation which imports seafood. When Kozloff contracted to buy seafood from Sawant, the parties discussed the acquisition of rejection risk insurance. The Food and Drug Administration inspects all seafood entering this country, and the rejection risk policy would

insure against losses from FDA rejection of any or all of the shipments.

Kozloff contacted the Chicago office of Bayly, Martin & Fay, Inc. (BMF), to procure the insurance. BMF's principal office is in New York. Because BMF could not place the insurance with approved domestic insurers, under New York law it was required to deal with an excess line broker. BMF contacted Allied, a New York corporation licensed as an excess line broker, to arrange for foreign insurers to underwrite the risk for members of the National Fisheries Industry. Allied did not deal directly with any of the members.

After assembling a group of European insurers, Allied sent its binder to BMF in New York. The binder listed Ben Kozloff, Inc., Chicago, Illinois, as the assured. BMF sent the binder to its Chicago office, which sent it to Kozloff. Allied had no knowledge that BMF did not issue a new binder, but referred to Allied's binder as its own. The policy and policy conditions were similarly forwarded by Allied to BMF in New York. BMF then sent the policy to Kozloff. BMF in Chicago billed Kozloff for the premiums, forwarded its payment to New York, and then BMF in New York issued its check to Allied.

Kozloff made several claims for rejected seafood to BMF in Chicago and New York. When the European underwriters paid the claims, Allied, pursuant to BMF's request, issued its checks payable to Kozloff. Allied sent its checks to BMF in New York. BMF sent the checks to its Chicago office, which would send them to Kozloff.

On April 16, 1981, Sawant, as a third-party beneficiary of the insurance agreement, filed this action against Kozloff, BMF and all of the European insurers when they failed to pay several claims. On December 21, 1981, Sawant filed an amended complaint naming Allied as a defendant. Allied was served with summons in June 1982, and when it took no action, Sawant obtained an order of default and on October 13, 1982, a default judgment. Kozloff also filed a counterclaim against Allied and obtained an order of default against it on October 21, 1982. Kozloff also served Allied in New York.

On December 1, 1982, Allied filed a special and limited appearance and a motion to quash to contest the court's jurisdiction. The trial court found that Allied had been properly served with summons and had knowledge of the proceedings. Because Allied did not diligently present its defense and because Allied had minimum contacts with Illinois, the trial court denied the motion to quash and struck Allied's special appearance.

Allied initially contends that filing a special appearance under

section 2—301 of the Code of Civil Procedure was an appropriate procedure to contest jurisdiction and that the trial court erred in imposing a standard of due diligence.

■■ The courts of Illinois may acquire jurisdiction over a foreign corporation if it is properly served with summons and has minimum contacts with the State. (*World-Wide Volkswagen Corp. v. Woodson* (1980), 444 U.S. 286, 62 L. Ed. 2d 490, 100 S. Ct. 559; *International Shoe Co. v. Washington* (1945), 326 U.S. 310, 90 L. Ed. 95, 66 S. Ct. 154.) Lack of jurisdiction, for the failure of either of these two elements, may be raised at any time, and the party raising the issue is not restricted by time limitations or the diligence requirements of section 2—1401. (*Home State Savings Association v. Powell* (1979), 73 Ill. App. 3d 915, 392 N.E.2d 598; *Lebanon Trust & Savings Bank v. Ray* (1973), 10 Ill. App. 3d 345, 293 N.E.2d 623.) To attack the *in personam* jurisdiction of the court, a party must file a special appearance with a motion to quash the service of summons. (*Farley v. Blackwood* (1978), 56 Ill. App. 3d 1040, 372 N.E.2d 921; *Mason v. Freeman National Printing Equipment Co., Ltd.* (1977), 51 Ill. App. 3d 581, 366 N.E.2d 1015.) Allied followed these procedures and the trial court erred when it considered Allied's diligence in deciding the motions.

Sawant and Kozloff maintain that a different standard is applicable here because Allied admits it received service of process. They argue that Allied has ignored the Illinois courts and to condone such action would invite chaos. (*Johnson-Olson Floor Coverings, Inc. v. Branthaver* (1968), 94 Ill. App. 2d 394, 236 N.E.2d 903.) However, section 2—1401, which provides relief from default judgments, and which Sawant and Kozloff maintain should be applicable here, does not affect a party's right to seek relief from a void order or judgment by any other method. See Ill. Rev. Stat. 1983, ch. 110, par. 2—1401(f).

Having determined that Allied followed the proper procedure to contest jurisdiction, we turn to the merits of Allied's appeal. Allied contends that it neither resides, transacts nor does business in Illinois and is therefore not subject to the jurisdiction of the Illinois courts. Since Sawant and Kozloff do not dispute that Allied is a foreign corporation which was not "doing business" in Illinois, we need only consider jurisdiction under the long-arm statute.

Section 2—209 of the Illinois Code of Civil Procedure provides in relevant part:

"(a) Any person, whether or not a citizen or resident of this State, who in person or through an agent does any of the acts

hereinafter enumerated, thereby submits such person, and, if an individual, his or her personal representative, to the jurisdiction of the courts of this State as to any cause of action arising from the doing of any of such acts:

(1) The transaction of any business within this State;

(2) The commission of a tortious act within this State;

* * *

(c) Only causes of action arising from acts enumerated herein may be asserted against a defendant in an action in which jurisdiction over him or her is based upon this Section." (Ill. Rev. Stat. 1983, ch. 110, par. 2—209.)

The long-arm statute was adopted to provide jurisdiction over nonresident defendants to the extent permitted by the due process clause. (*Nelson v. Miller* (1957), 11 Ill. 2d 378, 143 N.E.2d 673; *Aetna Casualty & Surety Co. v. Looney* (1981), 98 Ill. App. 3d 1057, 424 N.E.2d 1347.) Due process requires certain "minimum contacts" between the defendant and the forum state such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice. (*International Shoe Co. v. Washington* (1945), 326 U.S. 310, 90 L. Ed. 95, 66 S. Ct. 154; *Clements v. Barney's Sporting Goods Store* (1980), 84 Ill. App. 3d 600, 406 N.E.2d 43.) In order to exercise jurisdiction, the defendant must have purposely availed itself of the privilege of conducting business in this State, thus invoking the benefits and protection of the laws of this State. *Hanson v. Denckla* (1958), 357 U.S. 235, 2 L. Ed. 2d 1283, 78 S. Ct. 1228.

■ Allied urges that it did not have minimum contacts with Illinois nor had it availed itself of the privilege of conducting business in this State. We agree. Allied was never present in Illinois, physically or indirectly by mail or telephone. Nor did Allied initiate the transaction in question. Allied was approached in New York to participate by another New York corporation. Allied's activities were conducted entirely within the State of New York with the foreign insurers and BMF's New York office.

Sawant and Kozloff maintain that Allied voluntarily entered into a transaction with an entity it knew was located in Illinois because Allied sent its binder to an Illinois resident and paid claims with its checks to an Illinois resident. (*Empress International, Ltd. v. Riverside Seafoods, Inc.* (1983), 112 Ill. App. 3d 149, 445 N.E.2d 371; see *McGee v. International Life Insurance Co.* (1957), 355 U.S. 220, 2 L. Ed. 2d 223, 78 S. Ct. 199.) However, this argument ignores the fact that all of Allied's activities were with BMF in New York, and that it was BMF in Chicago which sent the binder, collected the premi-

ums and forwarded the checks for claims.

Sawant and Kozloff also argue that Allied invoked the jurisdiction of Illinois courts by injecting an insurance policy into the stream of commerce which it knew was destined for an Illinois resident. Although, in *Gray v. American Radiator & Standard Sanitary Corp.* (1961), 22 Ill. 2d 432, 176 N.E.2d 761, the court recognized that personal jurisdiction may be asserted over a corporation that delivers its product into the stream of commerce, here we are not dealing with a product. Allied merely performed a service for BMF and the European insurers.

We likewise reject Sawant's and Kozloff's contention that Allied committed a tortious act within this State. They claim that they were injured in Illinois by Allied's refusal to pay insurance claims. A similar argument was considered and rejected in *Green v. Advance Ross Electronics Corp.* (1981), 86 Ill. 2d 431, 427 N.E.2d 1203. There, Advance Ross maintained that it had suffered an economic injury as a result of Green's tortious acts. The court held that the tortious acts were committed at the site of the last act on which liability is predicated. Here, as in *Advance Ross*, the ultimate economic loss is too attenuated a contact to justify jurisdiction over Allied.

■ Finally, Sawant and Kozloff point to sections 121—3 and 123 of the Illinois Insurance Code (Ill. Rev. Stat. 1983, ch. 73, pars. 733—3, 735), to support jurisdiction over Allied. Section 121—3 defines the transaction of insurance business as specified acts performed "in this State." Allied did not act in this State and the Illinois Insurance Code will not provide a basis for jurisdiction where the long-arm statute does not. Section 123 is similarly inapplicable, since it merely provides a method for substituted service of process.

For the foregoing reasons, the order of the circuit court of Cook County denying Allied's motion to quash service of process and striking Allied's special and limited appearance is reversed.

Order reversed.

RIZZI, P.J., and WHITE, J., concur.