No. 2--96--0213

                                                                         

                                  IN THE

                        APPELLATE COURT OF ILLINOIS

                              SECOND DISTRICT

JOHN WHITE and BARBARA WHITE,    )  Appeal from the Circuit Court

                                 )  of Lake County.

     Plaintiffs-Appellees,       )           

                                 )

v.                               )  No. 93--L--1290

                                 )

ROBERT RATCLIFFE III,            )           

                                 )           

     Defendant-Appellant         )

                                 )  Honorable

(Farrell Michael Putman,         )  Bernard E. Drew, Jr.,

 Defendant).                     )  Judge, Presiding.

     JUSTICE GEIGER delivered the opinion of the court:

     The defendant, Robert Ratcliffe III, appeals from the January

17, 1996, order of the circuit court of Lake County denying his

petition to vacate a default judgment pursuant to section 2--1401

of the Code of Civil Procedure (735 ILCS 5/2--1401 (West 1994)). 

Ratcliffe, a resident of London, England, argues that the trial

court lacked jurisdiction to enter the default judgment because he

was not served process in a manner authorized by the Hague

Convention on the Service Abroad of Judicial and Extrajudicial

Documents in Civil or Commercial Matters (the Hague Convention). 

We affirm.

     On September 23, 1993, the plaintiffs, John White and Barbara

White, filed a conversion action in the circuit court of Lake

County, alleging that the defendants, Ratcliffe and Farrell Michael

Putman, burglarized their home in December 1989.  On November 15,

1993, the plaintiffs filed an amended complaint, containing the

same allegations.  

     Also on November 15, 1993, summons issued on the amended

complaint.  On November 24, 1993, Putman was served, and on January

7, 1994, an appearance was filed on his behalf.

     On November 16, 1993, in an attempt to serve Ratcliffe, the

plaintiffs' attorney mailed the summons and a copy of the amended

complaint via international registered mail to Ratcliffe's last

known address, 7 King Frederick IX Towers, Finland Street, Surrey

Quays, London, England, SE161TH.  The plaintiffs' attorney

subsequently received a return receipt indicating that the

documents were received and signed for by "V. Ratcliffe."  Although

the return receipt did not specify the date of delivery, the

postmark was dated December 16, 1993.

     On or about December 16, 1993, Ratcliffe telephoned the

plaintiffs' attorney and stated that he would be visiting Illinois

before the end of 1993 and that he would retain a lawyer to defend

the action at that time.  No appearance, however, was filed on the

defendant's behalf during the remainder of 1993.  On January 6,

1994, the plaintiffs' attorney wrote Ratcliffe to advise him that

a default would be entered against him at the January 19, 1994,

status hearing if no appearance was filed before that time.  In

response to the letter, Ratcliffe telephoned the plaintiffs'

attorney and stated that he was not hiring an attorney and that he

would file a pro se appearance and answer.

     At the January 19, 1994, status hearing, the plaintiffs'

attorney advised the trial court that he had been in contact with

Ratcliffe and that it was Ratcliffe's intention to file a pro se

appearance and answer.  The trial court continued the case to April

13, 1994, for another status hearing.  On February 11, 1994, the

plaintiffs' attorney again wrote to Ratcliffe, advising him that if

he failed to file an appearance prior to the April 13, 1994, status

hearing, a default would be entered against him.  Ratcliffe,

however, took no action to defend the case.

     On April 13, 1994, the trial court entered a default against

Ratcliffe and set the case for prove up on June 13, 1994.  On April

13, 1994, the plaintiffs' attorney sent copies of the default order

via both international registered mail and regular airmail.  The

plaintiffs' attorney also sent a letter advising Ratcliffe that if

he desired to defend the case he would have to file a motion to

vacate the default judgment as soon as possible.  Ratcliffe again

took no action to defend the case.

     In order to avoid any potential future attack by Ratcliffe on

service of process, the plaintiffs' attorney requested that the

default judgment entered against Ratcliffe be vacated.  The

plaintiffs' attorney then proceeded to serve Ratcliffe again using

the following alternate methods:  On June 13, 1994, another alias

summons was issued.  The plaintiffs' attorney then retained an

English process server through a London solicitor.  The process

server attempted personal service several times in June and July,

but was unsuccessful; in the process, however, Ratcliffe was

alerted to these attempts to effect service on him.  On July 14,

1994, Ratcliffe telephoned the plaintiffs' attorney to reiterate

that he would be filing a pro se appearance and answer.

     On August 25, 1994, another alias summons was issued.  The

plaintiffs' attorney then requested that the trial court issue an

official "Request for Service Abroad of Judicial or Extrajudicial

Documents" as required for service made pursuant to the Hague

Convention.  These materials were sent via overnight Federal

Express International Delivery to the office of Her Majesty's

Principal Secretary of State for Foreign Affairs (the English

Central Authority).  On October 20, 1994, the English Central

Authority proceeded to serve Ratcliffe the alias summons and

amended complaint.

     On December 6, 1994, another alias summons was issued.  This

alias summons was forwarded via overnight Federal Express

International Delivery to Karen Beer, an English process server. 

On December 16, 1994, Beer personally served the alias summons and

amended complaint upon Ratcliffe.  Beer made the following sworn

statements in the return of service:

                                 "1.  I am a person authorized under the Laws of England

     to serve process issued through the Courts of England and

     elsewhere.

                                 2.  On Friday the 16th day of December 1994 at 0830 hours

     at 7 King Frederick IX Towers, Finland Street, Surrey Quays,

     London SE161TH, England, I personally served Robert Ratcliffe

     III with the Summons issued in this action *** bearing date

     the 6th day of December 1994, *** said Summons[] being

     accompanied by a copy of the Amended Complaint and Jury Demand

     filed herein on the 15th day of November 1993.

                                 3.  At the time of service the [] Defendant Robert

     Ratcliffe III admitted his identity to me and read the

     proceedings served upon him."

     Ratcliffe again took no action to defend the case.

     On January 19, 1995, the plaintiffs filed a motion for entry

of a default judgment.  On January 25, 1995, the trial court

entered a default judgment against the defendant and set the matter

for prove up on March 6, 1995.  At the prove up, the trial court

heard the testimony of defendant Putman.  Putman testified that

Ratcliffe had planned and carried out the burglary.  At the

completion of Putman's testimony, the trial court entered judgment

against Ratcliffe in the amount of $130,060.29.  Thereafter, the

action against Putman was dismissed without prejudice.

     On November 1, 1995, Ratcliffe filed a special and limited

appearance and a section 2--1401 petition to vacate the default

judgment (see 735 ILCS 5/2--1401 (West 1994)).  Ratcliffe made the

following arguments in the petition:  (1) that the service of the

August 25, 1994, alias summons by the English Central Authority was

invalid because it was not completed within the 30-day period

during which the summons was valid; (2) that the service of the

December 6, 1994, alias summons by Beer was invalid because the

Hague Convention does not permit service by an independent process

server; (3) that the August 25, 1994, alias summons served through

the English Central Authority was invalid because it was not served

in duplicate as required by article 3 of the Hague Convention; and

(4) that the default judgment was entered in violation of article

15 of the Hague Convention, which requires a six-month waiting

period between service of process and the entry of a default

judgment.

     The plaintiffs filed a verified answer to Ratcliffe's

petition, supported by 48 pages of exhibits documenting the service

attempts detailed above.  The plaintiffs argued  (1) that Ratcliffe

had been properly served by international mail, as permitted by

article 10(a) of the Hague Convention; (2) that Ratcliffe was

personally served by Beers, as permitted by article 10(c) of the

Convention; (3) that the Hague Convention does not require

duplicate service of the documents; (4) that the six-month period

required by article 15 of the Hague Convention applies only in

those instances where there has been no return of service; and (5)

that the trial court could not vacate the default judgment pursuant

to article 16 of the Hague Convention, because Ratcliffe had been

given sufficient time to defend the action.  Alternatively, the

plaintiffs filed a motion to extend the 30-day time period during

which the English Central Authority could serve the August 25,

1994, alias summons.

     On January 17, 1996, the trial court denied Ratcliffe's

section 2--1401 petition to vacate the default judgment.  Ratcliffe

filed a timely notice of appeal.

     Section 2--1401 of the Code of Civil Procedure provides a

mechanism by which a final judgment may be vacated.  735 ILCS 5/2--

1401 (West 1994).  In order to obtain relief from a default

judgment pursuant to section 2--1401, the moving party must show

(1) that he has a meritorious defense to the action; (2) that he

has exercised due diligence in presenting such a defense to the

trial court; and (3) that he has exercised due diligence in filing

a petition pursuant to section 2--1401.  Halle v. Robertson, 219

Ill. App. 3d 564, 568 (1991).

     Generally, a section 2--1401 motion to vacate a default

judgment is addressed to the sound discretion of the trial court,

and its denial will be reversed only if the trial court abused its

discretion.  Sterne v. Forrest, 145 Ill. App. 3d 268, 277 (1986). 

In the instant case, however, Ratcliffe's section 2--1401 petition

challenges the jurisdiction of the trial court and argues that he

was not served process in a manner authorized by the Hague

Convention.  Proper service of summons is a prerequisite for

obtaining in personam jurisdiction over a party, and a judgment

entered without proper service is void ab initio for lack of

jurisdiction over a defendant.  Meldoc Properties v. Prezell, 158

Ill. App. 3d 212, 215 (1987).  Indeed, a judgment entered without

proper service of process is void even if the party against whom a

judgment is entered had notice of the proceedings.  State Bank v.

Thill, 113 Ill. 2d 294, 308-09 (1986).  Since the issue of whether

a trial court has personal jurisdiction over a party is a question

of law, we will review the instant case de novo.  See State Bank,

113 Ill. 2d at 308-09.

     The plaintiffs initially argue that a number of the issues

raised in Ratcliffe's appellate brief are presented for the first

time on appeal.  A review of these issues, however, reveals that

they are merely an elaboration on the challenges to service raised

in Ratcliffe's section 2--1401 petition.  As already noted, a

challenge to service of process is a challenge to the jurisdiction

of the court.  Meldoc Properties, 158 Ill. App. 3d at 215. 

Ratcliffe properly preserved his objection to the trial court's

jurisdiction by filing a special and limited appearance and then by

filing his section 2--1401 petition to vacate within the time

permitted by law.  See 735 ILCS 5/2--1401 (West 1994); R.W. Sawant

& Co. v. Allied Programs Corp., 130 Ill. App. 3d 71, 74 (1984).

Additionally, we note that a party may object to the trial court's

personal jurisdiction at any time.  R.W. Sawant & Co., 130 Ill.

App. 3d at 74.  Accordingly, we will consider all of Ratcliffe's

jurisdictional arguments relating to the service of process in the

instant case.

     Our review of the record reveals that Ratcliffe received a

copy of the summons and amended complaint on three separate

occasions.  On December 16, 1993, he received an alias summons and

a copy of the amended complaint via international registered mail;

on October 20, 1994, he was served with an alias summons and a copy

of the amended complaint by the English Central Authority; and on

December 16, 1994, he was served an alias summons and a copy of the

amended complaint by process server Beers.

     Ratcliffe argues that the service attempts made through

international registered mail and the English Central Authority

were invalid because, in each instance, he did not receive the

alias summons within 30 days of its issue.  Supreme Court Rule

102(b) mandates that "[n]o summons *** may be served later than 30

days after its date."  134 Ill. 2d R. 102(b).  The alias summons

sent by international registered mail had an issue date of November

15, 1993, and was received by Ratcliffe on December 16, 1993.  The

alias summons served through the English Central Authority had an

issue date of August 25, 1994, and was received by Ratcliffe on

October 20, 1994.

     Without reaching the merits of Ratcliffe's argument, we note

that no such alleged defect existed with the alias summons served

by process server Beers.  That alias summons was issued on December

6, 1994, and personally served on Ratcliffe on December 16, 1994. 

Ratcliffe, therefore, was served the alias summons and amended

complaint within 30 days of its December 6, 1994, issue as required

by Rule 102(b).

     Ratcliffe argues that the Hague Convention does not permit

personal service by an independent process server and, instead,

requires all service of process to be made through the English

Central Authority.  Ratcliffe therefore argues that the December 6,

1994, alias summons personally served by Beers on December 16,

1994, was improper and thus ineffective to invoke the trial court's

jurisdiction.  The plaintiffs respond by arguing that article 10(c)

of the Hague Convention expressly permits the service of judicial

documents directly through independent process servers in England.

     The Hague Convention is a multinational treaty, which was

first drafted in 1965, for the purpose of creating an appropriate

means "to ensure that judicial and extrajudicial documents to be

served abroad shall be brought to the notice of the addressee in

sufficient time."  Hague Convention, November 15, 1965, preamble,

20 U.S.T. 361, 362, T.I.A.S. No. 6638 (reprinted in 28 U.S.C.A.

Fed. R. Civ. P. 4, at 210  (West 1992)) (hereinafter 28 U.S.C.A.

Fed. R. Civ. P.).  Both the United States and England are

signatories to the Hague Convention.  28 U.S.C.A. Fed. R. Civ.

P. 4, Note, at 122 (West Supp. 1996).  The Hague Convention applies

"in all cases, in civil or commercial matters, where there is

occasion to transmit a judicial or extrajudicial document for

service abroad."  28 U.S.C.A. Fed. R. Civ. P. 4 at 210.  By virtue

of the Supremacy Clause, the Hague Convention applies to the

service of process in the instant case and preempts any

inconsistent methods of service permitted by Illinois law. 

Volkswagenwerk Aktiengesellschaft v. Schlunk, 486 U.S. 694, 699,

100 L. Ed. 2d 722, 730, 108 S. Ct. 2104, 2108 (1988).

     The Hague Convention sets out specific procedures for

accomplishing foreign service of process.    Articles 2 through 6

of the Convention permit service via the "Central Authority"

designated by the country in which service is to be made.  28

U.S.C.A. Fed. R. Civ. P. 4 at 210-11.  Although the Central

Authority is always to be made available as a means to effectuate

service, its use is not compulsory, and other methods of service

are provided in the remaining articles of the Convention. 

Ackermann v. Levine, 788 F.2d 830, 838-39 (2d Cir. 1986).  For

example, article 8 permits each contracting State "to effect

service of judicial documents upon persons abroad *** directly

through its diplomatic or consular agents."  28 U.S.C.A. Fed. R.

Civ. P. 4 at 211.  Also, article 10(a) permits the service of

judicial documents "by postal channels" as long as the country

where service is to be made does not object.  28 U.S.C.A. Fed. R.

Civ. P. 4 at 212.

     The relevant articles of the Hague Convention necessary to

resolve the instant case are articles 19 and 10(c).  Article 19

expressly permits service of process by any method of service

allowed by "the internal law of the contracting State."  28

U.S.C.A. Fed. R. Civ. P. 4 at 213; Bankston v. Toyota Motor Corp.,

889 F.2d 172, 173 (8th Cir. 1989).  Under article 19, any method of

service will be deemed effective as long as there is nothing

contained in the foreign nation's law, either explicitly or by

compelling implication, to suggest that the method violates some

deep-rooted policy of the nation involved.  28 U.S.C.A. Fed. R.

Civ. P. 4, Note C4--24, at 65 (West Supp. 1996).

     Our review of English civil practice and procedure reveals

that the use of an independent process server is permitted in order

to effectuate service of process.  Order 10 of the Rules of the

Supreme Court of England expressly requires that a defendant must

be personally served process commencing a lawsuit.  Rules of the

Supreme Court of England, Order 10, rr. 1, 5.   Such personal

service may be accomplished by employing a process server to leave

a copy of the document with the person to be served.  Rules of the

Supreme Court of England, Order 65, r.2.  Since the use of an

independent process server is expressly permitted under English

law, such a method of service would likewise be effective herein

pursuant to article 19 of the Hague Convention.

     The use of an independent process server is also permitted

under article 10(c) of the Convention.  Article 10(c) provides, in

pertinent part:

                                 "Provided the State of destination does not object, the

     present Convention shall not interfere with--

                              * * *

                                        (c)  the freedom of any person interested in a judicial

     proceeding to effect service of judicial documents directly

     through the judicial officers, officials or other competent

     persons of the State of destination."  28 U.S.C.A. Fed. R.

     Civ. P. 4 at 212.

     Subparagraph (c) delineates three categories of persons who are

permitted to serve process: (1) judicial officers; (2) officials;

and (3) other competent persons.  Therefore, provided that the

contracting country does not object, a foreign plaintiff would be

permitted to utilize any individual within one of these three

categories to effectuate service of process.  An independent

process server authorized by English law to serve process falls

within the category of "other competent persons" permitted to

effectuate service.  See Balcom v. Hiller, 46 Cal. App. 4th 1758,

1763-65 (1996); Vazquez v. Sund Emba AB, 548 N.Y.S.2d 728, 729-32,

152 A.D.2d 389, ___ (1989). 

     Ratcliffe argues that the United Kingdom has expressly

objected to the terms of article 10(c).  Specifically, Ratcliffe

relies on the following portion of the United Kingdom's

ratification of the Hague Convention:

                                 "With reference to the provisions of paragraphs (b) and

     (c) of Article 10 of the Convention, documents for service

     through official channels will be accepted in the United

     Kingdom only by the central or additional authorities and only

     from judicial consular or diplomatic officers of other

     Contracting States."  28 U.S.C.A. Fed. R. Civ. P. 4 at 226.

     Our reading of this language does not lead us to conclude that

United Kingdom has objected to article 10(c).  Instead, we believe

this language was meant to be a clarification that any documents

for service through official channels will be accepted only by the

central or additional authority.  The language quoted above does

not disturb that portion of article 10(c) which permits the use of

"other competent persons," such as private process servers, to

effect service of process without the aid of the English

government.  We note that a similar interpretation of this language

has been adopted by the California appellate court in Balcom v.

Hiller, 46 Cal. App. 4th 1758, 1763-65 (1996).  We therefore reject

Ratcliffe's contention that this declaration was meant to require

all foreign service of process to be effected through the English

Central Authority.

     In light of the foregoing discussion, we conclude that English

law expressly permits the use of private process servers to obtain

personal service.  Therefore, under either articles 19 or 10(c) of

the Hague Convention, the plaintiffs herein were permitted to hire

an independent process server to effectuate service on Ratcliffe in

the United Kingdom.  Beer testified in her affidavit of service

that she was "a person authorized under the Laws of England to

serve process issued through the Courts of England and elsewhere." 

Beer testified that on December 16, 1994, she personally served

Ratcliffe the December 6, 1994, alias summons and a copy of the

amended complaint and jury demand.  Beer also testified that

Ratcliffe "admitted his identity to [her] and read the proceedings

served upon him."  Based on such testimony, we conclude that

Ratcliffe was properly served the December 6, 1994, alias summons

within 30 days of its issue.  Moreover, we find that such service

was made in compliance with both English law and the Hague

Convention and was therefore sufficient to invoke the trial court's

personal jurisdiction over Ratcliffe.

     Ratcliffe's next argument on appeal is that, even if service

was proper, the trial court lacked the authority under article 15

of the Hague Convention to enter the January 25, 1995, default

judgment.  Article 15 provides, in pertinent part:

                                 "Where a writ of summons or an equivalent document had to

     be transmitted abroad for the purpose of service, under the

     provisions of the present Convention, and the defendant has

     not appeared, judgment shall not be given until it is

     established that--

                                 (a) the document was served by a method prescribed by the

     internal law of the State addressed for the service of

     documents in domestic actions upon persons who are within its

     territory, or

                                 (b) the document was actually delivered to the defendant

     or to his residence by another method provided for by this

     Convention, and that in either of these cases the service or

     the delivery was effected in sufficient time to enable the

     defendant to defend.

                                 Each contracting State shall be free to declare that the

     judge, notwithstanding the provisions of the first paragraph

     of this article, may give judgment even if no certificate of

     service or delivery has been received, if all the following

     conditions are fulfilled--

                                 (a) the document was transmitted by one of the methods

     provided for in this Convention,

                                 (b) a period of time of not less than six months,

     considered adequate by the judge in the particular case, has

     elapsed since the date of the transmission of the document,

                                 (c) no certificate of any kind has been received, even

     though every reasonable effort has been made to obtain it

     through the competent authorities of the State addressed."  28

     U.S.C.A. Fed. R. Civ. P. 4 at 212-13.

     Ratcliffe argues that in the instant case the six-month waiting

period required by subparagraph (b) of the second paragraph had not

elapsed prior to the entry of the default order.  Ratcliffe points

out that personal service was made by Beer on December 16, 1994,

while the default was entered January 25, 1995.  This argument is

without merit.

     The six-month waiting period mandated by subparagraph (b) of

the second paragraph applies only in those instances where "no

certificate of service or delivery has been received."  This was

not the case herein.  As discussed above, Beer provided an

affidavit of service which was filed with the trial court.  As the

plaintiffs were able to provide a certificate of service, only the

first paragraph of article 15 had to be satisfied prior to the

trial court's entry of a default judgment.  As cited above, that

paragraph requires that, prior to the entry of a default, the trial

court determine (1) that service was proper under the internal law

of the country where the defendant is to be served; (2) that the

document was actually delivered to the defendant; and (3) that

service was effected in sufficient time for the defendant to

defend.

     Each of these prerequisites was satisfied in the instant case. 

First, as already noted, the plaintiffs' use of an independent

process server to serve the alias summons and amended complaint was

permitted under English law.  Second, Beer's affidavit of service

evidences that Ratcliffe was personally served the alias summons

and amended complaint on December 16, 1994.  In regard to whether

Ratcliffe was served the documents in sufficient time to defend the

action, we note that the default order was not entered until

January 25, 1995, which was 40 days after Ratcliffe was served. 

This period of time was 10 days longer than the 30-day period

during which a defendant is required to answer or appear.  134 Ill.

2d R. 181.  Additionally, Ratcliffe had received notice of the

instant lawsuit on at least two other occasions dating back to

December 16, 1993.  Ratcliffe has spoken with the plaintiffs'

attorney on several occasions regarding the need for him to defend

the action. We therefore conclude that Ratcliffe had sufficient

time prior to the entry of the default judgment to defend this

action.  As all three requirements of the first paragraph of

article 15 were satisfied, we conclude that the trial court

properly entered default judgment against Ratcliffe.

     Ratcliffe's final argument on appeal is that the trial court

violated article 16 of the Hague Convention by refusing to grant

his section 2--1401 petition to vacate default judgment.  Article

16 of the Hague Convention provides, in pertinent part:

                                 "When a writ of summons *** [is] transmitted abroad for

     the purpose of service, under the provisions of the present

     Convention, and a judgment has been entered against a

     defendant who has not appeared, the judge shall have the power

     to relieve the defendant from the effects of the expiration of

     the time for appeal from the judgment if the following

     conditions are fulfilled:

                                 (a) the defendant, without any fault on his part, did not

     have knowledge of the document in sufficient time to defend,

     or knowledge of the judgment in sufficient time to appeal, and

                                 (b) the defendant has disclosed a prima facie defense to

     the action on the merits."  28 U.S.C.A. Fed. R. Civ. P. 4 at

     213.

     Ratcliffe argues that at no time prior to the entry of the default

judgment order did he receive notice that the plaintiffs were

seeking a default judgment.  Ratcliffe argues that he did not learn

of the default judgment until October 1, 1995, when his father was

telephoned by the plaintiffs.  Ratcliffe therefore argues that

under subparagraph (a) of article 16 he did not have knowledge of

the default judgment in time to defend.  Ratcliffe also argues that

he has a prima facie defense to the action, as he did not take part

in the burglary of the plaintiffs' residence.

     Despite Ratcliffe's arguments to the contrary, we find that he

has failed to demonstrate that he did not receive service of

process in sufficient time to defend this action.  Ratcliffe was

properly served process by Beers on December 16, 1994, 40 days

prior to the entry of default.  The alias summons which was served

on Ratcliffe expressly stated that if he failed to file an answer,

or otherwise appear, within 30 days of receipt, "a judgment or

decree by default may be taken against [him] for the relief prayed

in the complaint."  Moreover, Ratcliffe had knowledge of this suit

as far back as December 16, 1993, when he received a copy of the

alias summons and the amended complaint by international registered

mail.  Therefore, Ratcliffe's failure to defend this action or

vacate the default judgment entered by the trial court was his own

fault.  We therefore conclude that the trial court did not abuse

its discretion in denying Ratcliffe's section 2--1401 petition to

vacate the default judgment.

     For the foregoing reasons, the judgment of the circuit court

of Lake County is affirmed.

     Affirmed.

     BOWMAN and RATHJE, JJ., concur.